**Lois E. HILKERT, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

No. 96–208.

United States Court of Veterans Appeals.

Argued March 16, 1998.

Decided Feb. 1, 1999.

Gary L. Beaver for the appellant.

R. Randall Campbell, Deputy Assistant General Counsel, with whom Robert E. Coy, Acting General Counsel, and Ron Garvin, Assistant General Counsel, were on the pleadings, for the appellee.

Before NEBEKER, Chief Judge, and KRAMER, FARLEY, HOLDAWAY, IVERS, STEINBERG, and GREENE, Judges.

HOLDAWAY, Judge, filed the opinion of the Court. STEINBERG, Judge, filed an opinion concurring in part and dissenting in part in which KRAMER, Judge, joined.

HOLDAWAY, Judge:

The appellant, Lois E. Hilkert, as the surviving spouse of the veteran, Franklin T. Hilkert, appeals a January 1996 decision of the Board of Veterans' Appeals (BVA or Board) which denied her claim for dependency and indemnity compensation (DIC). The Board determined that the veteran's death was not connected to his exposure to radiation during military service. The Court has jurisdiction under 38 U.S.C. §§ 7252(a).

The Court issued its opinion on July 16, 1998, vacating the Board's decision and remanding the matter for further adjudication. *See Hilkert v. West,* 11 Vet.App. 284 (1998). On August 6, 1998, the Secretary filed a motion for en banc review which was opposed by the appellant. After considering these pleadings, the Court will grant the Secretary's motion and withdraw the July 16, 1998 opinion. This opinion is issued in its stead. For the following reasons, the Court will affirm the decision of the Board.

## I. FACTS

The veteran served on active duty in the U.S. Army from April 1945 to January 1948. His service medical records do not indicate treatment for any relevant condition. In 1984, the veteran was diagnosed with adenocarcinoma of the rectosigmoid junction with lymph node and liver metastasis. In April

1985, he died as a result of complications arising from this condition.

In 1992, the appellant filed a claim for DIC, asserting that her husband's death should be service connected because he was exposed to radiation in service and subsequently developed a condition related to radiation exposure. Following the applicable regulation, the VA regional office (VARO) sought a radiation dosage assessment from the Defense Nuclear Agency (DNA) to determine the amount of radiation to which the veteran was exposed during service. The DNA confirmed that the veteran was exposed to residual radiation from an atomic explosion for one day in November 1945 while in Nagasaki, Japan, before being deployed elsewhere. Referring to a publication prepared by the National Institute of Occupational Safety and Health entitled *Radiation Dose Reconstruction: U.S. Occupation Forces in Hiroshima and Nagasaki, Japan, 1945–46,* the DNA reported that the maximum possible dose of residual radiation from the atomic blast anyone stationed in Nagasaki during the occupation could have received was less than 1 rem.

The VARO then forwarded the claim to the Director of Compensation and Pension for review. In order to accurately review the merits of the appellant's claim, the Director of Compensation and Pension requested an advisory medical opinion from the Under Secretary for Health. Dr. Susan Mather performed the evaluation on behalf of the Under Secretary for Health. Dr. Mather evaluated the information provided and concluded that "it is highly unlikely that his disease can be attributed to exposure to ionizing radiation in service." Dr. Mather based her conclusion on the fact that the veteran had received a maximum dose of less than 1 rem of radiation at age 18 and did not develop his condition until 35 years after exposure. Referring to a publication entitled "CIRRPC Scientific Panel Report No. 6, 1988," and a report prepared by the National Research Council, Committee on Biological Effects of Ionizing Radiations, entitled *Health Effects of Exposure to Low Levels of Ionizing Radiation,* Dr. Mather noted that individuals exposed to low levels of radiation are not more likely to develop colon cancer than those who are not exposed. Rather, the risk of colon cancer increases only after exposure to "intense irradiation."

After a review of this report, the Director of Compensation and Pension advised the VARO that there was no reasonable possibility that the veteran's exposure to radiation in service caused his disease. On the basis of this information, the VARO denied the appellant's claim for DIC. The appellant then appealed to the Board. The Board decided that the veteran's condition was not caused by his exposure to radiation during service. While the Board noted that the veteran was exposed to radiation in service and subsequently developed a condition related to radiation exposure, it concluded, on the basis of Dr. Mather's report, that it was highly unlikely that the veteran's condition can be attributed to radiation exposure while in service. The appellant then filed a timely appeal to this Court.

## II. ANALYSIS

### A. Service Connection Under 38 C.F.R. § 3.311

DIC is paid to the surviving spouse, children, or parents of a qualifying veteran who dies from a service-connected disability. 38 U.S.C. § 1310. For such a death to be considered service connected, it must result from a disability incurred in the line of duty. 38 U.S.C. § 101(16).

In order to service connect a disability, a claimant has the initial burden of showing that a claim is well grounded. 38 U.S.C. § 5107(a); *see Grottveit v. Brown,* 5 Vet.App. 91, 92 (1993). For a claim to be well grounded, generally, there must be: (1) a medical diagnosis of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the in-service injury or disease and the current disability. *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604 (Fed. Cir.1996) (table).

■ Congress recognized, however, that for veterans who were exposed to radiation during military service, this procedure was unduly burdensome because many veterans were having difficulties supporting their claims for compensation. *See Wandel v. West*, 11 Vet.App. 200 (1998). Pursuant to Congress' mandate, VA established special procedures to follow for those veterans seeking compensation for diseases related to exposure to radiation in service. *See* Veterans' Dioxin and Radiation Exposure Compensation Standards Act, Pub.L. No. 98–542, 98 Stat. 2725 (1984); 38 C.F.R. § 3.311 (1998). This regulation provides that:

> In all claims in which it is established that a radiogenic disease first became manifest after service ... and it is contended the disease is a result of exposure to ionizing radiation in service, an assessment will be made as to the size and nature of the radiation dose or doses. When dose estimates provided ... are reported as a range of doses to which a veteran may have been exposed, exposure at the highest level of the dose range reported will be presumed.

38 C.F.R. § 3.311(a)(1).

This regulation establishes a series of chronological obligations upon both parties. *See Wandel, supra.* First, the claimant must establish that the veteran suffers from a radiogenic disease. *See* 38 C.F.R. § 3.311(b)(2). This disease must manifest within a certain time period. *See* 38 C.F.R. § 3.311(b)(5). Once a claimant has established a diagnosis of a radiogenic disease within the specified period and claims that the disease is related to his radiation exposure while in service, VA must then obtain a dose assessment. 38 C.F.R. § 3.311(a)(1); *see Wandel, supra.* After it is determined by the dose assessment that the veteran was exposed to radiation, the VARO is then required to refer the case to the Under Secretary for Benefits for further consideration. 38 C.F.R. § 3.311(b); *Ramey v. Gober*, 120 F.3d 1239, 1244 (Fed.Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1171, 140 L.Ed.2d 181 (1998); *Wandel, supra.*

When the claim is referred, the Under Secretary for Benefits "shall consider the claim with reference to the factors specified in paragraph (e) of this section and may request an advisory opinion from the Under Secretary for Health." 38 C.F.R. § 3.311(c)(1). Paragraph (e) of this section states:

> (e) *Factors for Consideration.* Factors to be considered in determining whether a veteran's disease resulted from exposure to ionizing radiation in service include:
>
> (1) The probable dose, in terms of dose type, rate, and duration as a factor in inducing the disease, taking into account any known limitations in the dosimetry devices employed in its measurement or the methodologies employed in its estimation;
>
> (2) The relative sensitivity of the involved tissue to induction, by ionizing radiation, of the specific pathology;
>
> (3) The veteran's gender and pertinent family history;
>
> (4) The veteran's age at time of exposure;
>
> (5) The time-lapse between exposure and onset of the disease; and
>
> (6) The extent to which exposure to radiation, or other carcinogens, outside of service may have contributed to the development of the disease.

38 C.F.R. § 3.311(e).

After referring to these factors, the Under Secretary for Benefits must then determine the likelihood that the claimant's exposure to radiation in service resulted in the current radiogenic disease. . *See* 38 C.F.R. § 3.311(c)(1). This section provides two options:

> (i) If after such consideration the Under Secretary for Benefits is convinced sound scientific and medical evidence supports the conclusion it is at least as likely as not the veteran's disease resulted from exposure to radiation in service, the Under Secretary for Benefits shall so inform the regional office of jurisdiction in writing. The Under Secretary for Benefits shall set forth the rationale for this conclusion, including an evaluation of the claim under the applicable factors specified in paragraph (e) of this section.

(ii) If the Under Secretary for Benefits determines there is no reasonable possibility that the veteran's disease resulted from radiation exposure in service, the Under Secretary for Benefits shall so inform the regional office of jurisdiction, in writing, setting forth the rationale for this conclusion.

38 C.F.R. § 3.311(c)(1). As the regulation states, the Under Secretary for Benefits must make this determination based on "sound scientific evidence." *See id.* This regulation specifically defines "sound scientific evidence" as

observations, findings, or conclusions which are statistically and epidemiologically valid, are statistically significant, are capable of replication, and withstand peer review, and ... which are consistent with current medical knowledge and are so reasonable and logical as to serve as the basis of management of a medical condition.

38 C.F.R. § 3.311(c)(3). Since this determination relies heavily on medical and scientific findings and analysis, the Under Secretary for Benefits may request an advisory opinion from the Under Secretary for Health to assist in carrying out the obligation imposed by this regulation. *See* 38 C.F.R. § 3.311(c)(1) (authorizing the Under Secretary for Benefits to request an advisory opinion from the Under Secretary for Health).

In this case, the appellant submitted evidence to show that the veteran was diagnosed with a radiogenic disease and claimed that the veteran's exposure to radiation while in military service caused this disease. Pursuant to the regulation, the VARO then requested a dose assessment from the Department of Defense, specifically the DNA. The DNA responded by confirming that the veteran was exposed to radiation for the one day he spent in Nagasaki but also stated that the maximum dose to which he could have been exposed was less than one rem. After receiving confirmation of exposure, the VARO properly referred the claim to the Director of Compensation and Pension for review who acted on behalf of the Under Secretary for Benefits. Due to the nature of the claim, the Director of Compensation and Pension requested an advisory opinion from the Under Secretary for Health. Dr. Susan Mather, writing the opinion for the Under Secretary for Health, concluded that "it is highly unlikely that [the veteran's] disease can be attributed to exposure to ionizing radiation in service." Dr. Mather based her conclusion on the fact that the veteran received no more than one rem of radiation at age 18 and did not develop his disease until approximately 35 years after exposure. Dr. Mather noted that individuals exposed to low levels of radiation, as the veteran in this case was, are not more likely to develop colon cancer than those who are not exposed. After receiving this report, the Director of Compensation and Pension advised the VARO in writing that there was no reasonable possibility that the veteran's disease resulted from radiation exposure in service. The VARO and the Board then based their decisions on Dr. Mather's opinion.

The appellant argues that the Board erred because the Director of Compensation and Pension did not specifically address all of the factors listed in 38 C.F.R. § 3.311(e). The appellant's argument implies that the Under Secretary for Benefits erred in making his determination because in the absence of a specific listing of facts, he must have considered only the probable dose of radiation the appellant received in service rather than all of the factors provided. The appellant's argument thus compels the Court to decide whether or not 38 C.F.R. § 3.311(c)(1)(ii) requires the Under Secretary for Benefits to specifically address each factor enumerated in 38 C.F.R. 3.311(e).

As noted above, 38 C.F.R. § 3.311(c)(1) requires the Under Secretary for Benefits to "consider the claim with reference to the factors specified in paragraph (e)." Reference is defined as "the directing of attention to a person or thing" and "an indication, as in a book or article, of some other work to be consulted." WEBSTER'S NEW WORLD DICTIONARY 1127 (3d college ed.1986). Under the plain meaning of this section, the Under Secretary for Benefits is not required to discuss each of the factors listed, but rather to consult these factors as a point of reference in determining the recommendation to the VARO. Failure to *discuss* these factors is

by no means a failure to *consider* these factors.

After he has reviewed the claim, the Under Secretary for Benefits must choose one of two possible recommendations. *See* 38 C.F.R. § 3.311(c)(1). The Under Secretary for Benefits may find that it is "as likely as not" that the veteran's disease resulted from exposure to radiation in service, thereby recommending service connection. *See* 38 C.F.R. 3.311(c)(1)(i). On the other hand, the Under Secretary for Benefits may find that there is "no reasonably possibility" that the veteran's disease resulted from radiation exposure in service. *See* 38 C.F.R. 3.311(c)(1)(ii). If the Under Secretary for Benefits finds that the claim has "no reasonable possibility," he must inform the VARO of the decision in writing "setting forth the rationale for this conclusion." 38 C.F.R. § 3.311(c)(1)(ii). This section does not mention the list of factors in paragraph (e) nor could it reasonably be construed to require a discussion of them.

The absence of a requirement that all of the factors be addressed cannot be interpreted as accidental. If the Secretary had intended the opinion of the Under Secretary for Benefits to include a discussion of all the factors listed in paragraph (e), there is other language in the same regulation which demonstrates that he knew how to achieve that end. For example, if after receiving the advisory opinion from the Under Secretary for Health, the Under Secretary for Benefits still cannot make the conclusion as ordered under 38 C.F.R. 3.311(c)(1), the matter must be referred to an outside consultant. 38 C.F.R. § 3.311(c)(2). Rather than stating that the outside consultant shall consider the claim with reference to the list of factors set forth, the regulation specifically provides that the consultant's report must include a written evaluation of a list of six factors similar to the list of factors set forth in 38 C.F.R. § 3.311(e).

This regulation does not require or imply a need for all factors to be explicitly referred to in writing in order for the regulation to function logically. In some cases, it would be unnecessary to analyze all of the factors when the expert found that some of the factors were dispositive. In this case, the combination of the probable dose received, the nature of the cancer involved, and the appellant's age were sufficient, in Dr. Mather's opinion, to rule out any possibility that the veteran's disease was related to exposure to radiation in service. It appears from the language of Dr. Mather's report that no other factors could have significantly impacted the probability that the appellant's disease was caused by exposure to radiation in service. In other words, the cited factors were so conclusive that they essentially mooted the factors not expressed in writing. Therefore, the Court holds that a discussion by the Under Secretary for Benefits of all of the factors under paragraph (e) is not required if the Under Secretary for Benefits recommends that there is "no reasonable possibility that the veteran's disease resulted from radiation exposure in service" as authorized under 38 C.F.R. § 3.311(c)(1)(ii).

## B. Use of Treatises

■ When the Board relies upon evidence developed or obtained after the most recent Statement of the Case or Supplement Statement of the Case, the Board is required to give the claimant adequate notice of its intention to use such evidence. *Thurber v. Brown*, 5 Vet.App. 119, 122 (1993); *see Kirwin v. Brown*, 8 Vet.App. 148, 153 (1995). The purpose behind this rule is to ensure the fairness of the adjudicative process by providing notice to the claimant of all the pertinent laws and facts upon which the Board will make its determination and an opportunity to respond to such evidence. *See Thurber, supra.*

■ The evidence in question here is: (1) the dose reconstruction report prepared by the National Institute of Occupational Safety and Health, entitled *Radiation Dose Reconstruction: U.S. Occupational Forces in Hiroshima and Nagasaki, Japan 1945–46;* (2) the CIRRPC Scientific Panel Report No. 6, 1988; and (3) a report prepared by the National Research Council, Committee on the Biological Effects of Ionizing Radiations, entitled *Health Effects of Exposure to Low Levels of Ionizing Radiation.* The appellant argues that the Board should have provided

the appellant with copies of these publications so that she could respond to them.

In this case, Dr. Mather and the DNA, not the Board, relied upon these publications to reach their conclusions. Publications referred to or relied upon by expert witnesses are not publications before the Board. *See Bowey v. West,* 11 Vet.App. 106, 109 (1998). The Board did not use or rely upon these publications; rather, the Board based its decision on the opinions of Dr. Mather and the DNA. The appellant had notice of Dr. Mather's opinion and the DNA's report prior to adjudication at the VARO level and prior to adjudication at the Board. The appellant had the opportunity to contest the validity of these opinions or could have provided her own evidence in support of her claim. The Board, therefore, did not err with respect to this issue.

### C. Duty to Assist

Once a claimant has submitted a well-grounded claim, the Secretary is required to assist that claimant in developing the facts pertinent to that claim. 38 U.S.C. § 5107. The appellant contends that the Secretary and the Board violated this duty by failing to provide evidence on radiogenic diseases available to support her claim.

 Even assuming the appellant's claim is well grounded and thus triggered the duty to assist, the Secretary did not violate his duty. The duty to assist is not unlimited. *See Wood v. Derwinski,* 1 Vet.App. 190, 193 (1991). The Secretary's duty to assist does not encompass "a duty to prove a claim with the claimant only in a passive role." *See Gobber v. Derwinski,* 2 Vet.App. 470, 472 (1992). The Secretary fulfilled his obligations under 38 C.F.R. § 3.311. Furthermore, the appellant did not request copies of these documents before the Board. The appellant has not shown that the documents requested would support her claim. The Board does not have a duty to sua sponte provide these documents. Thus, the Board did not err in failing to provide the material the appellant claims will support her claim.

### D. Competence of Expert Witness

Finally, the appellant asserts that the Board failed to qualify Dr. Mather as an expert witness. The record indicates that the appellant did not present this issue to the Board for review. A challenge to Dr. Mather's qualifications was not incorporated into the Notice of Disagreement, the Statement of the Case, or the substantive appeal. *See* 38 U.S.C. § 7105(d); *cf. Grantham v. Brown,* 114 F.3d 1156, 1159–60 (Fed.Cir.1997) (Archer, C.J., concurring). In her appeal to this Court, the appellant does not contend that Dr. Mather was incompetent but rather argues that the Board erred by failing to establish competency. However, the Board implicitly accepted Dr. Mather's competency by accepting and relying upon the conclusions in her opinion. An appellant bears the burden of persuasion on appeals to this Court to show that such reliance was in error. *See Berger v. Brown,* 10 Vet.App. 166, 169 (1997). There is simply nothing in the record that would cast doubt on Dr. Mather's competency. *Cf. Hill v. Brown,* 9 Vet.App. 246 (1996); *Ashley v. Derwinski,* 2 Vet.App. 307 (1992) (presumption of regularity attaches to actions of public officials). Therefore, the appellant has failed in her burden of demonstrating error in the Board's decision.

### III. CONCLUSION

After consideration of the pleadings and a review of the record, the Court holds that the appellant has not demonstrated that the BVA committed either legal or factual error which would warrant reversal or remand.

The decision of the Board is AFFIRMED.

STEINBERG, Judge, with whom KRAMER, Judge, joins, concurring in part and dissenting in part:

The appellant, the widow of a World War II veteran, appeals through counsel a January 19, 1996, decision of the Board of Veterans' Appeals (BVA or Board) concluding that the veteran's cause of death was not connected to his service and therefore denying her claim for Department of Veterans Affairs (VA) dependency and indemnity compensation (DIC) under 38 U.S.C. § 1310. Record (R.) at 4–5. On July 16, 1998, this Court, by a divided panel, vacated the BVA decision and remanded the matter for readjudication.

*Hilkert v. West,* 11 Vet.App. 284 (1998). After the Secretary moved for an en banc decision, the Court voted 5–2 to grant that motion and vacate the panel opinion. Hence, the panel majority is now the minority of the full Court. Much of this dissenting opinion draws upon the prior July 16 panel opinion.

## I. Introduction

The majority opinion exercises considerable ingenuity in order to find a rationale to affirm the Board's decision in this case. In doing so, it ignores the basic tenet of this Court's caselaw that judicial review depends on the BVA's setting forth a clear articulation of its reasons or bases, as required by 38 U.S.C. § 7104(d)(1). Instead, the majority holds, in essence, that when Congress mandated in 1984 that the Secretary establish guidelines to govern the resolution of certain kinds of ionizing-radiation claims it intended to require only that those guidelines be *considered* and not that agency adjudicators must set forth in writing *in each case* the result of the application of those guidelines to the facts of the particular case. In other words, the majority holds that Congress intended that unwritten, unexpressed consideration—essentially only "stealth consideration"—would be enough. Not only is this notion contrary to basic principles of rational decisionmaking, but such unwritten, undis-

closed consideration clearly violates the later enactments of Congress requiring that the Board (in 1988) and then regional offices (effective in 1990) must include in their decisions the *reasons* for them and not hide their reasons and reasoning under the table.[1]

It is interesting that in 1993 this Court, over our dissent, similarly misinterpreted this same 1984 Act as being somehow intended to deprive veterans and their survivors of certain basic rights under VA's benefits-adjudication system[2], only to be corrected by the U.S. Court of Appeals for the Federal Circuit (Federal Circuit).[3] Now, it appears that similar rectification is in order as to this same Act of Congress.

The majority enables its ultimate conclusion (1) by defining the issue as being whether *all* the factors prescribed in VA's own guidelines must be considered in every case, not whether the required consideration of those factors must be reduced to writing; (2) by rewriting the medical opinion of the VA Assistant Chief Medical Director so as to rule out her consideration of factors that *the majority*, based on its own "scientific expertise", does not deem applicable to this case; and (3) then by transforming this medical opinion (in all its incompleteness) into a decision of the VA Under Secretary for Benefits and from there into a decision of the VARO

---

**1.** *See* 38 U.S.C. §§ 5104(b), 7104(d)(1). In *Gilbert v. Derwinski* this Court, in expounding upon the new reasons-or-bases requirement that Congress had enacted, stated:

> The requirement that administrative decisions be supported by "reasons or bases" has long been recognized by the judiciary as necessary to facilitating judicial review. In *SEC v. Chenery Corp. (Chenery II)*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947)[,] the Supreme Court held that
>
> > If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive.
>
> *Id.* at 196–97, 67 S.Ct. at 1577.
> Recently, the United States Court of Appeals for the District of Columbia [Circuit] held that "[t]he basis for an administrative decision, of course, must be clear enough to permit effective judicial review." *International Longshore-*

*men's Assoc. v. National Mediation Board,* 870 F.2d 733, 735 (D.C.Cir.1989).

> In view of the mandate of § [7104](d)(1) that the [Board of Veterans' Appeals (Board or BVA)] articulate with reasonable clarity its "reasons or bases" for decisions, and in order to facilitate effective judicial review, the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive. These decisions must contain clear analysis and succinct but complete explanations. A bare conclusory statement, without both supporting analysis and explanation, is neither helpful to the veteran, nor "clear enough to permit effective judicial review", nor in compliance with statutory requirements.

*Gilbert,* 1 Vet.App. 49, 56–57 (1990).

**2.** *Combee v. Principi,* 4 Vet.App. 78 (1993), *rev'd sub nom. Combee v. Brown,* 34 F.3d 1039 (Fed. Cir.1994).

**3.** *Combee v. Brown, supra* note 2; *see also Combee v. Brown,* 5 Vet.App. 248 (1993) (Steinberg and Kramer, JJ., dissenting).

and from there into a decision of the Board itself.[4] This legerdemain of the majority—seeking to transform the VA medical officer's mute deliberations into articulated reasons by the Secretary's original and appellate adjudicators—is but a judicial illusion that fails as analytical decisionmaking.

We set forth below the reasons for our above conclusions, although, were we to follow the formula that the majority seems to be embracing for VA adjudications, we could merely state, "We have good reasons in our minds, trust us, we really do", and say no more.

## II. Facts

The veteran served on active duty in the U.S. Army from April 1945 to January 1948. Record (R.) at 84. Service medical records (SMRs) and the report of his medical examination at discharge are negative for any relevant conditions. See R. at 13–18, 20–22, 24–52. In July 1984, he was diagnosed with adenocarcinoma of the rectum with lymph node and liver metastasis. R. at 59–60. A September 1984 Veterans' Administration (now Department of Veterans Affairs) regional office (RO) decision awarded non-service-connected pension. R. at 63–64. In April 1985, the veteran died; his death certificate listed the cause of death as hepatic failure due to liver metastasis due to carcinoma of the rectum. R. at 73.

In October 1991, the appellant filed a claim for DIC benefits. R. at 76–79. A January 1992 VARO decision denied service connection for the cause of the veteran's death, noting that he was not service connected for any condition during his lifetime and that SMRs and available evidence did not connect

his cause of death to service. R. at 86. The appellant then specifically sought consideration under 38 C.F.R. § 3.311, relating to claims based on exposure to ionizing radiation, and noted that the veteran had served in Japan in December 1945. R. at 88. The RO then apparently sought a dose estimate from the Defense Nuclear Agency (DNA); a May 1992 DNA letter confirmed that the veteran was present for one day at Nagasaki during the American occupation of Japan—November 2 to 3, 1945. R. at 91. Relying upon a scientific dose reconstruction prepared by the National Institute for Occupational Safety and Health (NIOSH), entitled *Radiation Dose Reconstruction: U.S. Occupation Forces in Hiroshima and Nagasaki, Japan, 1945–1946* [hereinafter NIOSH report], the DNA letter stated: "Using all possible 'worst case' assumptions, the maximum possible dose any individual serviceman might have received from external radiation, inhalation, and ingestion is less than one rem." *Ibid.* In June 1992, the RO confirmed its prior decision and noted that cancer of the rectum was not then one of the radiogenic diseases listed under 38 C.F.R. § 3.311b(b)(2) (1991)—cancer of the rectum was, however, added to the list of such diseases in October 1995, see 60 Fed.Reg. 53,276 (1995)—or listed as one of the presumptively service-connected diseases in 38 C.F.R. § 3.309(d)(2) (1991). R. at 94.[5]

The appellant filed a timely appeal to the Board. R. at 103–04, 126–27. The RO then sought a review of the appellant's case pursuant to 38 C.F.R. § 3.311[6], forwarding its request to the Director of VA's Compensation and Pension Service (C & P Director) (R. at 129–30), who in turn sought a response

4. Rather than explicitly extending its unsupportable concept of unwritten, undisclosed consideration beyond the advisory opinion of the Under Secretary for Benefits to encompass unwritten, undisclosed consideration by the Department of Veterans Affairs (VA) regional office (RO) or the BVA, the majority just ignores this issue.

5. In June 1992, the appellant submitted a copy of a discharge summary from United Health Services dated in July 1984; the final diagnosis was "[t]otally obstructing adenocarcinoma of the rectosigmoid junction extending downwards in the upper third of the rectum with lymph node and liver metastasis". Record (R.) at 96–98. The

VARO again confirmed its prior decision (R. at 101), and in September 1992 it issued a Statement of the Case (SOC) that, inter alia, cited the report relied upon in the Defense Nuclear Agency (DNA) letter (R. at 116). In a letter dated in October 1992, a private physician, Dr. Patel, reported that the veteran's tumor was at the junction of the rectum and colon, "rectosigmoid colon", and that it actually involved part of both the colon and the rectum. R. at 120.

6. Although cancer of the rectum was not listed in 38 C.F.R. § 3.311b(b)(2) in 1992, colon cancer was.

from VA's Under Secretary for Health (R. at 132). Apparently in response to that request, Dr. Susan Mather, VA Assistant Chief Medical Director for Environmental Medicine and Public Health, opined that the veteran's dose was much lower than the "worst case" value cited in the DNA report and concluded: "[I]t is highly unlikely that his disease can be attributed to exposure to ionizing radiation in service". R. at 134. Her opinion cited two scientific reports to support its conclusion. *Ibid.* In a July 1993 letter to the RO, the C & P Director, noting that an opinion was requested from the Under Secretary for Health, and apparently relying upon the opinion from Dr. Mather, concluded that there was "no reasonable possibility that the veteran's disability was the result of such [radiation] exposure". R. at 140. In August 1993, the RO, referencing the § 3.311 process, again denied service connection for the veteran's cause of death (R. at 136–38) and issued a Supplemental SOC (SSOC) that referred to, inter alia, the two reports cited in Dr. Mather's opinion (R. at 144).

In the January 1996 BVA decision here on appeal, the Board concluded that a preponderance of the evidence was against the appellant's DIC claim. R. at 4–5. In summarizing the facts, the Board noted the DNA opinion regarding exposure and the NIOSH

report on which it relied (R. at 7) and Dr. Mather's opinion and the above-cited reports on which it relied (R. at 8). In its penultimate paragraph, the Board stated:

> The Board notes that the radiation dose reconstruction by DNA shows that the upper bound of the veteran's exposure to ionizing radiation in service was less than 1.0 rem. There is no medical opinion of record linking the adenocarcinoma of the rectosigmoid colon with metastasis to ionizing radiation exposure in service. There is, however, a medical opinion from a representative of the·Under Secretary of [sic] Health, that it is not more likely than not that the veteran's adenocarcinoma of the rectosigmoid colon was related to ionizing radiation in service. Nor does the evidence of record link this disorder to another incident of service or reveal another service-connected disability which caused the veteran's death or materially contributed to his death.

R. at 9. This appeal followed.

### III. Analysis

When a veteran dies from a service-connected disability, the veteran's surviving spouse is eligible for DIC. *See* 38 U.S.C. § 1310; 38 C.F.R. § 3.5(a) (1998).[7] When a

---

7. A veteran's death is due to a service-connected disability when "such disability was either the principal or a contributing cause of death". 38 C.F.R. § 3.312 (1998). A claim for section 1310 disability and indemnity compensation (DIC) is treated as a new claim, regardless of the status of adjudications concerning service-connected-disability claims brought by the veteran (*see* 38 C.F.R. § 20.1106 (1998); *Zevalkink v. Brown*, 6 Vet.App. 483, 491 (1994), *aff'd*, 102 F.3d 1236 (Fed.Cir.1996)); therefore, a DIC claimant must submit evidence sufficient to make the claim well grounded under 38 U.S.C. § 5107(a). As a general matter, service connection for VA disability compensation purposes will be awarded to a veteran who served on active duty during a period of war, or during a post–1946 peacetime period, for any disease or injury that was incurred in or aggravated by a veteran's active service or for certain diseases that were initially manifested, generally to a degree of 10% or more, within a specified presumption period after separation from service. *See* 38 U.S.C. §§ 1110, 1112(a), 1116, 1131, 1133(a), 1137; 38 C.F.R. §§ 3.303(a), 3.306, 3.307, 3.309 (1998).

As to the well groundedness of a claim, section 5107(a) provides in pertinent part: "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." The Court has defined a well-grounded claim as follows: "[A] plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a) ]." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). A well-grounded service-connection claim generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service injury or disease and a current disability. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed.Cir.1996) (table); *see also Epps v. Gober*, 126 F.3d 1464, 1468 (Fed.Cir. 1997) (expressly adopting definition of well-grounded claim set forth in *Caluza, supra* ), *cert. denied sub nom. Epps v. West*, —— U.S. ——, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998) (mem.); *Heuer v. Brown*, 7 Vet.App. 379, 384 (1995) (citing *Grottveit v. Brown*, 5 Vet.App. 91, 93 (1993)).

disease is first diagnosed after service but not within an applicable presumption period, service connection may nevertheless be established by evidence demonstrating that the disease was in fact "incurred" during the veteran's service, or by evidence that a presumption period applied. *See Combee v. Brown*, 34 F.3d 1039, 1042 (Fed.Cir.1994) ("[p]roof of direct service connection ... entails proof that exposure during service caused the malady that appears many years later"); *Cosman v. Principi*, 3 Vet.App. 503, 505 (1992) ("even though a veteran may not have had a particular condition diagnosed in service, or for many years afterwards, service connection can still be established"); *see also* 38 C.F.R. § 3.303(d) (1998).[8] In the instant case, the appellant claims that the veteran's adenocarcinoma of the rectosigmoid colon, which caused his death, resulted from his exposure to ionizing radiation in service. Service connection for such a condition may be established in one of three different ways: (1) By demonstrating that the condition at issue is one of the 15 types of cancer that are presumptively service connected under 38 U.S.C. § 1112(c) and 38 C.F.R. § 3.309 (1998); (2) by demonstrating direct service connection under 38 C.F.R. § 3.303(d), a task that "includes the difficult burden of tracing causation to a condition or event during service", *Combee*, 34 F.3d at 1043; or (3) by demonstrating direct service connection under § 3.303(d) ***with the assistance of the procedural advantages prescribed in 38 C.F.R. § 3.311***, if the condition at issue is one of the "radiogenic diseases" listed by the Secretary in § 3.311(b). *See Ramey v. Brown*, 9 Vet.App. 40, 44 (1996), *aff'd sub nom. Ramey v. Gober*, 120 F.3d 1239 (Fed. Cir.1997). This third route is, then, actually just another way of showing direct service

connection but with certain added assistance by the Secretary in developing the facts pertinent to the claim. *See* 38 C.F.R. § 3.311(f) (1998) (requiring that service-connection determination after § 3.311 claim development be made under "generally applicable" VA adjudication provisions set forth in part 3 of title 38, Code of Federal Regulations). The appellant here seeks to have the veteran's colon cancer service connected via the third route, by way of the claims-development procedural advantages provided by 38 C.F.R. § 3.311.

### A. Appellant's Contentions

In her motion for remand, the appellant abjures argument on the merits and raises the five following alleged defects in VA's procedures and the application of § 3.311 to her case: (1) That VA violated its 38 U.S.C. § 5107(a) duty to assist; (2) that VA failed to provide her with a reasonable opportunity to respond to scientific studies relied upon by the BVA in denying her claim; (3) that review by the Under Secretary for Benefits of the claim in accordance with 38 C.F.R. § 3.311(b) was not satisfied; (4) that the DNA report and Dr. Mather's opinion are inherently incredible because VA has not established Dr. Mather's qualifications for rendering an opinion in a radiogenic disease case; and (5) that VA has undermined the regulatory scheme by "automatically denying all § 3.311(b) radiogenic disease claims by veterans who served in post-war Japan" (Reply Brief (Br.) at 11). We do not disagree with the Court that arguments (1), (2), and (4) do not warrant a remand here; nor does argument (5), which the Court does not address.[9] We do disagree, and very much so, on the resolution of her third contention.

---

For purposes of determining whether a claim is well grounded, the credibility of the evidence supporting it is presumed. *See Robinette v. Brown*, 8 Vet.App. 69, 75–76 (1995); *King (Roderick) v. Brown*, 5 Vet.App. 19, 21 (1993). A Board determination whether a claim is well grounded is subject to de novo review by the Court under 38 U.S.C. § 7261(a)(1). *See Robinette*, 8 Vet.App. at 74; *Grivois v. Brown*, 6 Vet.App. 136, 139 (1994); *Grottveit, supra*.

**8.** The determination of service connection is a factual matter, *see Wray v. Brown*, 7 Vet.App.

488, 492 (1995); *Wood v. Derwinski*, 1 Vet.App. 190, 192 (1991), and the Court reviews BVA factfinding under a "clearly erroneous" standard; "if there is a 'plausible' basis in the record for the factual determinations of the BVA, ... [the Court] cannot overturn them". *Gilbert*, 1 Vet.App. at 53; 38 U.S.C. § 7261(a)(4).

**9.** Our analyses of these four issues is set forth in the panel's July 16, 1998, opinion, in parts II.B., D., and E., at 11 Vet.App. at 291–93 and 297–99. Hence, we will not reiterate that discussion here.

## B. Review by the Under Secretary for Benefits and Board's Reasons-or-Bases Requirement

The § 3.311 regulations were prescribed in 1985 (initially designated § 3.311b) pursuant to the Veterans' Dioxin and Radiation Exposure Compensation Standards Act, Pub.L. No. 98–542, 98 Stat. 2725 (1984) [hereinafter "1984 Act"], through a public rulemaking process. *See* 50 Fed.Reg. 15,848 (1985) (proposed regulations); 50 Fed.Reg. 34,452 (1985) (final regulations). Under section 5(a)(1) of the 1984 Act, the Secretary of Veterans Affairs is required "in order to promote consistency in claims processing and decisions", to prescribe regulations establishing guidelines and criteria "for the resolution of claims for benefits under laws administered by [VA] where . . . the claim of service connection is based on a veteran's exposure during service . . . to ionizing radiation from the detonation of a nuclear device", and the law *requires* that the regulations "shall include provisions specifying the factors to be considered in adjudicating issues relating to whether or not service connection should be granted in individual cases and the circumstances governing the granting of service connection for such disease". Pub.L. No. 98–542, § 5(a)(1), (2)(A)(iii), 98 Stat. at 2727–28. VA's regulation section 3.311(a)(1) was prescribed under the 1984 Act and provides in paragraphs (c) and (e) as follows:

(c). . . .

(1) When a claim is forwarded for review pursuant to paragraph (b)(1) of this section, the Under Secretary for Benefits shall consider the claim *with reference to the factors specified in paragraph (e)* of this section and may request an advisory medical opinion from the Under Secretary for Health.

(i) If after such consideration the Under Secretary for Benefits is convinced sound scientific and medical evidence supports the conclusion it is at least as likely as not the veteran's disease resulted from exposure to radiation in service, the Under Secretary for Benefits shall so inform the regional office of jurisdiction in writing. The Under Secretary for Benefits shall *set forth the rationale for this conclusion,* including an evaluation of the claim under the applicable factors specified in paragraph (e) of this section.

(ii) If the Under Secretary for Benefits determines there is no reasonable possibility that the veteran's disease resulted from radiation exposure in service, the Under Secretary for Benefits shall so inform the regional office of jurisdiction in writing, *setting forth the rationale for this conclusion.*

. . . .

(e) *Factors to be considered in determining whether a veteran's disease resulted from exposure to ionizing radiation in service include:*

(1) The probable dose, in terms of dose type, rate and duration as a factor in inducing the disease, taking into account any known limitations in the dosimetry devices employed in its measurement or the methodologies employed in its estimation;

(2) The relative sensitivity of the involved tissue to induction, by ionizing radiation, of the specific pathology;

(3) The veteran's gender and pertinent family history;

(4) The veteran's age at time of exposure;

(5) The time-lapse between exposure and onset of the disease; and

(6) The extent to which exposure to radiation, or other carcinogens, outside of service may have contributed to development of the disease.

38 C.F.R. § 3.311(c), (e) (emphasis added). The appellant argues that there is no evidence that the Under Secretary for Benefits ever reviewed the claim under paragraph (c) or that the factors listed under paragraph (e) were ever considered.

When VA determines pursuant to 38 C.F.R. § 3.311(b)—as it did in this case by virtue of the DNA report and the evidence submitted by the appellant—that a veteran was exposed to ionizing radiation and had developed a radiogenic disease (as listed under § 3.311(b)(2)), and that the radiogenic disease was first manifest in the period specified under § 3.311(b)(5) (in this case, "5 years or more after exposure"), then "before

its adjudication the claim will be referred to the Under Secretary for Benefits for further consideration in accordance with paragraph (c) of this section". 38 C.F.R. § 3.311(b)(1); *see Wandel v. West,* 11 Vet.App. 200, 204 (1998).[10]

Once the matter is referred to the Under Secretary for Benefits, the regulation provides that the Under Secretary *"shall* consider the claim with reference to *the factors* specified in paragraph (e) of this section and *may* request an advisory opinion from the Under Secretary for Health". 38 C.F.R. § 3.311(c)(1) (emphasis added). The regulation then sets forth three permutations for the response by the Under Secretary for Benefits: (1) If he or she finds that "sound scientific and medical evidence supports the conclusion [that] it is at least as likely as not [that] the veteran's disease resulted from exposure to radiation in service", then "the Under Secretary shall so inform the [RO]" and "shall set forth the rationale for this

conclusion, including an evaluation of the claim under the applicable factors specified in paragraph (e)" (38 C.F.R. § 3.311(c)(1)(i)); (2) if the Under Secretary finds that "there is no reasonable possibility that the veteran's disease resulted from radiation exposure in service, [he or she] shall so inform the [RO,] ... setting forth the rationale for this conclusion" (38 C.F.R. § 3.311(c)(1)(ii)); and (3) if the Under Secretary is "unable" to make either of the foregoing conclusions, he or she *"shall* refer the matter to an outside consultant in accordance with paragraph (d)" (38 C.F.R. § 3.311(c)(2) (emphasis added)), and the consultant's report—which must also consider the factors specified in paragraph § 3.311(e) [11]—is then to be transmitted to the RO by the Under Secretary "with any comments" by the Under Secretary (38 C.F.R. § 3.311(d)(3)). Subsequently, the RO adjudicates the claim under VA's "generally applicable" adjudication provisions (38 C.F.R. § 3.311(f); *see also* 38 C.F.R. § 3.303(d)).[12]

10. When these four § 3.311(a)(1) (1998) criteria are satisfied, as they were in the instant case, VA has the obligation under the Veterans' Dioxin and Radiation Exposure Compensation Standards Act, Pub.L. No. 98–542, 98 Stat. 2725 (1984) [hereinafter "1984 Act"], and the regulation to make an "assessment" of the radiation-exposure dose experienced by the veteran in service and then, dependent upon the result of that assessment, a further obligation to fulfill other developmental, procedural steps. The regulation does not make clear what that "assessment" contemplates except to state that "[w]here necessary" a dose estimate will be sought from the Department of Defense or the VA Under Secretary for Benefits. 38 C.F.R. § 3.311(a)(2). However, the regulation does make clear that when it "is determined" (presumably as a result of the seeking of a dose estimate or other records) that the veteran "was exposed to ionizing radiation" and subsequently developed a radiogenic disease not subject to a presumption of service connection under §§ 3.307 and 3.309 and within the presumption period under § 3.311(b)(5), it is required that "before its adjudication the claim will be referred to the Under Secretary for Benefits for further consideration". 38 C.F.R. § 3.311(b)(1); *see Wandel v. West,* 11 Vet.App. 200, 204 (1998). The regulation thus provides, at a minimum, a three-step process: (1) Claimant satisfies the four criteria of § 3.311(a) outlined above; (2) VA then seeks a dose estimate; (3) if the dose estimate shows exposure to ionizing radiation in service, VA then refers the matter to the Under Secretary for Benefits for consideration.

11. The majority inexplicably states the requirement as being to consider "six factors *similar to* the list of factors set fort in § 3.311(e)". *Ante* at 149–50 (emphasis added).

12. A claim under 38 C.F.R. § 3.311 is thus a unique sort of service-connection claim as to which VA must supply special claims-development assistance upon a showing that a claimant falls under that section's provisions, even where that claim might not otherwise satisfy the criteria for a well-grounded claim outlined in *Caluza, supra. See* Pub.L. No. 98–542, § 2(12), 98 Stat. at 2726 ("[s]uch claims [related to exposure to ionizing radiation and dioxin] ... present adjudicatory issues which are significantly different from issues generally presented in claims based upon the usual types of injuries incurred in military service"). The Board, without further comment, concluded that the appellant's claim was well grounded (R. at 8); however, the well groundedness of a claim is an issue that this Court determines de novo, *see Robinette, Grivois,* and *Grottveit,* note 7 *supra.* This Court may have suggested in *Combee v. Principi* that a person who submits a claim that falls within the four corners of § 3.311 has presented a claim that is well grounded under section 5107(a), *Combee v. Principi,* 4 Vet.App. at 85–86 (under § 3.311 "a veteran must meet certain threshold requirements in order to establish a well-grounded claim for service connection based on exposure to ionizing radiation"), *rev'd,* 34 F.3d 1039 (Fed. Cir.1994); *see also* 38 U.S.C. § 5107(a) ("[e]xcept as otherwise provided by the Secretary in accordance with the provisions" of title 38, Sec-

As to the part of the appellant's third contention that there was no review by the Under Secretary for Benefits, a review of the record on appeal—and parsing of the provisions of § 3.311(c)—suggests that the Under Secretary for Benefits did in fact review the claim. In accordance with § 3.311(b)(1)(iii), the RO referred the claim to the Under Secretary for Benefits (*see* R. at 129–30 (letter from RO to C & P Director)), and he—apparently through his agent, the C & P Director [13]—sought an opinion from the Under Secretary for Health (R. at 132 (letter from C & P Director)). Dr. Mather's opinion in response—noting "[a]s you requested, [the Veterans Health Administration] has reviewed the file of Frank T. Hilkert"—replied directly to the C & P Director (*see* R. at 136), and the C & P Director then returned an opinion to the RO that relied upon Dr. Mather's opinion (R. at 140) apparently given on behalf of the Under Secretary for Health.[14] Thus, it appears that the claim was forwarded to the Under Secretary for Benefits in accordance with § 3.311(b) and that the Under Secretary for Benefits—apparently through his agent—reviewed the claim and returned a response to the RO.[15]

However, the appellant's contention that the Under Secretary for Benefits' review did not address all of the factors specified in § 3.311(e) presents a more significant issue and leads to the process deficiencies on which this case turns, in our view. As pointed out, above, section 5(b)(2)(A)(iii) of the 1984 Act requires that the Secretary's "regulations ... establish guidelines and (where appropriate) standards and criteria *for the resolution of claims* for benefits ... based upon a veteran's exposure [to ionizing radiation] during service" and "shall include provisions specifying *the* factors to be considered in adjudicating issues relating to whether or not service connection should be granted in individual cases and the circumstances governing the granting of service connection for such disease". Pub.L. No. 98–542, § 5(a)(1), (2)(A)(iii), 98 Stat. at 2727–28 (emphasis added). In compliance specifically with this statutory section 5(b)(2)(A)(iii) requirement, the regulations provide in § 3.311(e), as we have seen, that the "[f]actors to be considered in determining whether a veteran's disease resulted from exposure to ionizing radiation in service" include the six specified factors quoted above and require in paragraph (c)(1) that "[w]hen a claim is forwarded [to the Under Secretary for Benefits] pursuant to paragraph (b)(1) of this section, the Under Secretary for Benefits shall consider the claim with reference to *the* factors specified in paragraph (e)", 38 C.F.R. § 3.311(c)(1) (emphasis added). Thus, the 1984 Act requires that the VA adjudicator (the RO or the BVA) consider in resolving service-connection claims "the factors" specified in the regulations prescribed by the Secretary (in § 3.311(e)), and the regulations establish a

retary shall assist claimant who has submitted well-grounded claim in developing claim). Nevertheless, any such conclusion would seem at odds with the Court's recent opinion in *Wandel*, 11 Vet.App. at 205, where the Court held that where the DNA § 3.311 dose estimate is that the veteran was exposed to no ionizing radiation, "further development" under § 3.311 is not required. Moreover, the Court went on there to assess whether the appellant's claim for direct service connection was well grounded without regard to the § 3.311 process and found that it was not because there was "no evidence to provide the requisite medical nexus between the veteran's death and his military service", *Wandel, supra*, a conclusion applicable in the instant case as well. However, *Wandel* leaves open a question whether a claim that meets the four § 3.311 threshold requirements and as to which the DNA dose estimate is positive (that is, more than a zero-exposure estimate), as it was here, is

thereby a well-grounded claim for direct service connection.

13. *See* 38 C.F.R. § 3.100(a) (1998) (general authority for Under Secretary for Benefits to designate supervisory personnel of Veterans Benefits Administration to make findings under applicable law and regulation as to payment of VA compensation and pension benefits).

14. *But see* 38 C.F.R. § 2.6(a) (1998) (specifying authority for Under Secretary for Health to delegate certain authority).

15. The appellant did not challenge before the Board the appropriateness of any delegation under § 3.311 and expressly declined to do so at the oral argument on this case before the Court. Consequently, we do not address any such issue for the first time on appeal. *See Morgan v. Brown*, 9 Vet.App. 161, 162 (1996) (per curiam order); *Davis v. Brown*, 10 Vet.App. 209, 213–14 (1997) (Kramer, J., separate views).

special process to assist the adjudicator in deciding ionizing-radiation-exposure claims.

Hence, the law requires that the Secretary prescribe "the factors" to be considered in adjudicating these ionizing-radiation-exposure claims, and the regulations require that "the factors" so prescribed must be considered. The majority seems to concede this requirement that all the prescribed factors must be considered by the Under Secretary for Benefits. *Ante* at 149.[16] The majority contends, however, that consideration may properly be undertaken sub silentio and never written down or disclosed. As we will explain, we do not agree with any such conclusion. However, even if we were to concede the acceptability under § 3.311 of such unwritten, undisclosed consideration by the Under Secretary for Benefits and by inference by the Under Secretary for Health in an advisory medical opinion provided under § 3.311(c)(1), that would not alter the result of the following analysis, a matter that the majority conveniently ignores, under the 1984 Act and requirements established for VA benefits adjudication in title 38 of the U.S. Code.

Under 38 U.S.C. § 7104(d)(1), a Board decision must include a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Simon v. Derwinski,* 2 Vet.App. 621, 622 (1992); *Masors v. Derwinski,* 2 Vet.App. 181, 188 (1992); *Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990) (quoted *supra* note 1). To comply with this requirement, eight years of unchallenged Court precedent dictates that the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the veteran. *See Caluza v. Brown,* 7

Vet.App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604 (Fed.Cir.1996) (table); *Gabrielson v. Brown,* 7 Vet.App. 36, 39–40 (1994); *Abernathy v. Principi,* 3 Vet.App. 461, 465 (1992); *Gilbert, supra.* Under 38 U.S.C. § 5104(b)(1), the Secretary has a comparable responsibility to specify, in the notice of a decision of the agency of original jurisdiction (generally an RO), a "statement of the reasons for the decision" in "any case where the Secretary denies a benefit sought". 38 U.S.C. § 5104(a), (b)(1); *see generally Crippen v. Brown,* 9 Vet.App. 412, 420 (1996) (outlining history of 1989 enactment of section 5104(b), effective in February 1990).

It is thus axiomatic that section 7104(d)(1) requires *the Board* to discuss specifically, in the adjudication of a case, the application of all "factors" that VA is required by law and regulation to consider in adjudication of a claim. *See Ridings v. Brown,* 6 Vet.App. 544, 546 (1994) (finding reasons-or-bases error and remanding where Board failed to discuss *all* elements applicable to determination whether recovery of overpayment would be against equity and good conscience under 38 C.F.R. § 1.965(a)); *Cullen v. Brown,* 5 Vet.App. 510, 512 (1993) (BVA decision "not capable of being judicially reviewed due to its failure to provide adequate 'reasons or bases' for its determination that recovery of the overpayment [under 38 C.F.R. § 1.965(a) ] of disability compensation benefits would not violate the principles of equity and good conscience"). Indeed, the Court in *Gilbert,* itself, remanded for the Board to explain why the evidence was not in equipoise for the purposes of the benefit-of-the-doubt rule in 38 U.S.C. § 5107(b). *Gilbert,* 1 Vet.App. at 59. Accordingly, in a § 3.311 claim, the Board is required by section 7104(d)(1) to discuss the applicability of the paragraph (e) factors that *the law* specifies are "to be considered in adjudicating" § 3.311 claims. *See* Pub.L. No. 98–542, § 5(b)(2)(A)(iii), 98 Stat. at 2728; 38 U.S.C. § 7104(d)(1); *see also* 38 C.F.R. §§ 3.311(e), (f). Because the

---

16. This concession seems at variance with the portion of the dissenting opinion that accompanied the initial panel opinion; the dissent had concluded: "The language [of the 1984 Act] does not require the Secretary to establish a single set

of factors which must be considered in every radiation case, much less a set of factors which must be discussed individually in writing." *Hilkert v. West,* 11 Vet.App. 284, 301 (1998).

1984 Act requires VA to consider in resolving service-connection claims "the factors" specified in the regulations that VA prescribes, and because the regulations specify those factors in paragraph (e), the plain meaning of the law is that all of the paragraph (e) factors must be considered as well as be discussed *by the adjudicator* in every § 3.311 case.

In the instant case, the Board's decision cannot be construed under any interpretation as having addressed the following factors from paragraph (e): (1) "[A]ny known limitations in the dosimetry devices employed in its measurement or the methodologies employed in its estimation"; (2) the "relative sensitivity of the involved tissue to induction, by ionizing radiation, of the specific pathology"; (3) the "veteran's gender and pertinent family history"; (4) the "veteran's age at time of exposure"; (5) the "time-lapse between exposure and onset of the disease"; and (6) the "extent to which exposure to radiation, or other carcinogens, outside of service may have contributed to development of the disease". This failure by the BVA to address in its decision all of the paragraph (e) factors frustrates judicial review of the decision because the Court cannot determine whether and to what extent all the factors enumerated pursuant to the 1984 Act are or ought to be applicable in the instant case and certainly cannot assess the adequacy of the Board's statement of the reasons or bases for its decision in accordance with 38 U.S.C. § 7104(d)(1) and our caselaw thereunder. *See Wing v. West*, 11 Vet.App. 98, 101 (1998) ("Board may not apply regulations piecemeal"); *Ridings*, 6 Vet.App. at 546; *Cullen*, 5 Vet.App. at 512; *see also Gabrielson, Simon, Masors,* and *Gilbert*, all *supra.*

Moreover, independent analysis by the Board as to virtually all of the § 3.311(e) factors would not comport with the Court's decision in *Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991). The paragraph (e) factors generally involve questions of medical judgment, and the Board may rely only upon medical evidence in reaching a decision on a medical question and may not provide its

own unsubstantiated medical conclusion. *See* 38 U.S.C. § 7104(a) (Board decisions "shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record"); *Colvin, supra* ("BVA panels may consider only independent medical evidence to support their findings").[17] Thus, because, as we have concluded, the Board was required by the 1984 Act and § 3.311 to "consider" all the § 3.311(e) factors in its adjudication of the claim, and because our caselaw precludes the Board from considering those factors without benefit of medical evidence of record, and because the medical evidence before the Board plainly did not address all those factors, the Board was required to remand the claim for the RO to obtain a medical opinion that would be adequate for the requisite analysis of the paragraph (e) factors. *See Goss v. Brown,* 9 Vet.App. 109, 114 (1996) ("[w]here the Board makes a decision based on an examination report which does not contain sufficient detail, remand is required for compliance with the duty to assist by conducting a thorough and contemporaneous medical examination") (quoting *Stanton v. Brown,* 5 Vet.App. 563, 569 (1993) (internal quotation marks omitted)); 38 C.F.R. §§ 4.2, 19.9 (1998); *Ardison v. Brown,* 6 Vet.App. 405, 407 (1994); *Abernathy,* 3 Vet.App. at 464.

That brings us to the question of the propriety of the Board's reliance on the Under Secretary for Benefits' response in this case. The Under Secretary's response can be used by the RO or BVA only to the extent that the response is based on expert evidence, because the application of the mandatory paragraph (e) factors requires special expertise. Hence, the Under Secretary's response is basically a useless document for purposes of the adjudication of a § 3.311 claim to the extent that that response is not based on expert evidence that itself considers the paragraph (e) factors. In this regard, it must be recognized that the enactment of the 1984 Act and the promulgation thereunder of the 1985 § 3.311 regulations predated the

---

17. *See also Winsett v. West,* 11 Vet.App. 420, 424 (1998); *Tucker v. West,* 11 Vet.App. 369, 373 (1998); *Alemany v. Brown,* 9 Vet.App. 518, 519 (1996); *Rollings v. Brown,* 8 Vet.App. 8, 12

(1995) (citing *Colvin v. Derwinski,* 1 Vet.App. 171, 175 (1991)); *Thurber v. Brown,* 5 Vet.App. 119, 120–22 (1993).

enactment of the 1988 presumptive service connection provisions in 38 U.S.C. § 1112(c), see Radiation–Exposed Veterans Compensation Act of 1988, Pub.L. No. 100–321, 102 Stat. 485 (1988), and the establishment of this Court and judicial review of BVA benefits-adjudication decisions, see Veterans' Judicial Review Act, Pub.L. No. 100–687, div. A, 102 Stat. 4105 (1988).

Hence, the provisions now contained in sections 5104(d) and 7104(d)(1) and this Court's caselaw expounding upon them were not part of the equation in the 1984–85 time period. However, those authorities do now govern the circumstances under which the § 3.311 process for consideration of the paragraph (e) factors can produce a response by the Under Secretary for Benefits that can be used properly thereafter by the RO and BVA in the adjudication of a § 3.311 claim under current law. In our view, such use can be consistent with applicable law and judicial decisions only where the Under Secretary for Benefits' response explicitly discusses all of the paragraph (e) factors [18] and does so based on a discussion of those factors by the Under Secretary for Health (or his or her appropriately designated agent) [19] or based on some other form of expert evidence that takes those factors into account, such as an outside consultant retained under § 3.311(c)(2) and (d) upon the recommendation of the Director of the National Cancer Institute. See 38 C.F.R. § 3.311(f) (§ 3.311

process culminates in adjudication of claim under VA "generally applicable" adjudication provisions).

The last task is to construe the § 3.311 regulations themselves. Of course, such construction must be made in the context of all of § 3.311, and we believe that a fair reading of the full § 3.311 regulation, with a view to avoiding conflict with the statute [20], is that it does not permit the Under Secretary for Benefits to render his written response without specific articulation of his or her consideration of the paragraph (e) factors or to decide questions requiring expertise without a basis in competent expert evidence of record; otherwise, the § 3.311 process would not accord with the 1984 Act and 38 U.S.C. §§ 5104, 7104(a) and (d)(1). In this regard, we note that the provisions of § 3.311(c)(i) and (ii) might be read, as indeed the majority has read them, as setting forth two different modes of response [21] depending on whether the decision is favorable or unfavorable to the claimant—with, inexplicably, *less* articulation where the decision is *against* the claim. However, in light of the clear requirements of the 1984 Act and of the § 3.311 regulation promulgated thereunder with regard to the mandatory consideration of all the paragraph (e) factors by the RO and the BVA, the § 3.311(c)(1) requirement that the Under Secretary for Benefits "shall consider the claim with reference to the factors specified in paragraph (e)" (38 C.F.R.

18. See 38 C.F.R. § 3.311(c)(1), (c)(1)(i), (ii) (Under Secretary for Benefits "shall consider the claim with reference to the factors specified in paragraph (e)" and "set forth the rationale for [his or her] conclusion" as to whether it is "at least as likely as not [that] the veteran's disease resulted from exposure to radiation in service"); see, e.g., 50 Fed.Reg. 34,452, 34,457 (1985) (noting that known limitations in dosimetry devices used in dose estimation "shall be taken into account" in that response).

19. See 50 Fed.Reg. 15,848, 15,850 (1985) (explaining that "[i]n making determinations under proposed § 3.311[ ](c), the Chief Medical Director would consider the factors specified in proposed § 3.311[ ](e)").

20. See Verdon v. Brown, 8 Vet.App. 529, 538 (1996) (citing Smith (William) v. Brown, 35 F.3d 1516, 1526 (Fed.Cir.1994) (citing LaVallee Northside Civic Ass'n v. Virgin Islands Coastal Zone

Management Comm'n, 866 F.2d 616, 623 (3d Cir.1989), "for the proposition that regulations must be construed to avoid conflict with a statute if fairly possible")).

21. On the one hand, the regulations specify that if the Under Secretary is convinced that "it is *at least as likely as not* [that] the veteran's disease resulted from exposure to radiation in service ... [he or she] shall set forth the rationale for this conclusion, including an evaluation of the claim under the applicable factors specified in paragraph (e) of this section"; on the other hand, if the Under Secretary "determines that there is *no reasonable possibility* that the veteran's disease resulted from radiation exposure in service ..., [he or she] shall so inform the regional office of jurisdiction in writing, *setting forth the rationale for this conclusion*". 38 C.F.R. § 3.311(c)(i), (ii) (emphasis added). In the case of a "no reasonable possibility" finding, then, consideration of the paragraph (e) factors is not expressly stipulated.

§ 3.311(c)(1)), and the sections 5104(b) and 7104(d)(1) requirements for ROs and the Board to articulate written reasons for their assessments of the evidence and for all their material determinations, we emphatically reject the majority's conclusion that the regulation allows *sub silentio* consideration of the paragraph (e) factors by the Under Secretary when he or she reaches a negative determination about the evidence as to a particular claim. *See Verdon v. Brown,* 8 Vet.App. 529, 538 (1996). With regard to any such distinction, it is noteworthy that 38 U.S.C. § 5104(b) requires as to all determinations of the Secretary, whether at the agency-of-original-jurisdiction (usually an RO) stage or at the Board,[22] that "where the Secretary *denies* a benefit sought, the notice [of decision] required by subsection (a) shall include (1) a statement of the reasons for the decision" (emphasis added).

Moreover, the majority's anomalous reading of § 3.311(c)(1) to require more articulation in support of a favorable determination than for an unfavorable one is compounded by that regulation's appearing to permit the Under Secretary for Benefits to make a favorable determination only based on "sound scientific and medical evidence", whereas an unfavorable determination (that "there is no reasonable possibility") need *not* be based on such scientific evidence. *Compare* 38 C.F.R. § 3.311(c)(1)(i) *with* 38 C.F.R. § 3.311(c)(1)(ii). The majority seems, however, to meld clause (i)'s reference to "sound scientific and medical evidence", into clause (ii), notwithstanding that that phrase is totally absent from the latter. *Ante* at 148–49. A similar—sensible, we think—reading of § 3.311(c)(1) as a whole would meld into clause (ii)'s reference to a written "setting forth the rationale" the clause (i) reference to inclusion of "an evaluation of the claim" under the paragraph (e) factors. This glaring inconsistency in the majority opinion's construction topples its house of cards.

In view of the foregoing discussion, the Court should hold, as did the panel, that the Board's statement of reasons or bases was inadequate, because "stealth consideration" is the same as no consideration at all, and vacate the Board decision and remand the claim for compliance with the 1984 Act, 38 U.S.C. § 7104(a) and (d)(1), and 38 C.F.R. § 3.311(c), (e), and (f) in accordance with the foregoing analysis.

## IV. Conclusion

On the basis of the foregoing analysis, the ROA, and the pleadings of the parties, we would vacate the BVA decision and remand the matter of the veteran's service connection for colon/rectum cancer for section 1310 DIC purposes for expeditious further development and readjudication, on the basis of all applicable law and regulation, and issuance of a readjudicated decision supported by an adequate statement of reasons or bases. *See* 38 U.S.C. §§ 1110, 1310, 5107(a), (b), 7104(a), (d)(1), 7261; Pub.L. No. 98–542; 38 C.F.R. § 3.311; *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991). Accordingly, for the foregoing reasons we respectfully dissent.

---

22. *See Thompson (Charles) v. Brown,* 8 Vet.App. 169, 175–76 (1995) (holding that section 5104(b) applies to both RO and BVA adjudications), *reaff'd,* 9 Vet.App. 173 (1996) (per curiam order).