﻿Citation Nr: 19172611
Decision Date: 09/18/19 Archive Date: 09/18/19

DOCKET NO. 10-13 875A
DATE: September 18, 2019

ORDER

Entitlement to an initial compensable disability rating for pulmonary embolism is denied.

FINDING OF FACT

Throughout the period of the appeal, the competent and probative evidence of record demonstrates that the Veteran’s status post pulmonary embolism has been asymptomatic and has not been manifested by any residuals.

CONCLUSION OF LAW

The criteria for a compensable rating for status post pulmonary embolism have not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.1, 4.7, 4.97, Diagnostic Code 6817 (2018).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from August 1986 to August 2006.

In September 2017, the Board remanded the claim for additional development. There was substantial compliance with the Board’s remand directives to decide the claim on appeal. See Stegall v. West, 11 Vet. App. 268 (1998);

Disability ratings are determined by evaluating the extent to which a veteran’s service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing the symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Rating Schedule). The percentage ratings in the Rating Schedule represent the average impairment in earning capacity resulting from service-connected diseases and injuries and their residual conditions in civilian occupations. The percentage ratings are generally adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the disability.

Diagnostic Codes (DCs) are assigned by the rating officials to individual disabilities. DCs provide rating criteria specific to a particular disability. If two DCs are applicable to the same disability, the DC that allows for the higher disability rating applies. See 38 C.F.R. § 4.7. When a question arises as to which of two ratings apply under a particular DC, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. See id. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of a veteran. 38 C.F.R. § 4.3.

The Veteran’s status post pulmonary embolism has been rated as noncompensable pursuant to Diagnostic Code 6817, which contemplates pulmonary vascular disease. 38 C.F.R. § 4.97.

Under these rating criteria, a noncompensable rating is appropriate when the disease is asymptomatic, following resolution of pulmonary thromboembolism. A 30 percent rating is assigned for being symptomatic, following resolution of acute pulmonary embolism. A 60 percent rating contemplates chronic pulmonary thromboembolism requiring anticoagulant therapy, or; following inferior vena cava surgery without evidence of pulmonary hypertension or right ventricular dysfunction. A 100 percent rating is warranted for primary pulmonary hypertension, or; chronic pulmonary thromboembolism with evidence of pulmonary hypertension, right ventricular hypertrophy, or cor pulmonale, or; pulmonary hypertension secondary to other obstructive disease of pulmonary arteries or veins with evidence of right ventricular hypertrophy or cor pulmonale. 38 C.F.R. § 4.97, Diagnostic Code 6817. The rating criteria also instruct the adjudicator to “evaluate other residuals following pulmonary embolism under the most appropriate diagnostic code, such as chronic bronchitis (Diagnostic Code 6600) or chronic pleural effusion or fibrosis (Diagnostic Code 6845), but do not combine that evaluation with any of the above evaluations.” Id. at Note [1].

The Veteran was most recently afforded a VA examination in April 2019. The examiner documented that the Veteran had a pulmonary embolism in March 2005, which had resolved completely, as shown by a computed tomography (CT) scan of the chest dated August 16, 2012, which showed “no evidence of pulmonary embolism.” The examiner wrote that the Veteran reported subjective exertional dyspnea, however, the pulmonary test was normal, and the lung examination was normal. The examiner noted that the exertional dyspnea is a subjective complaint and that based on history, a physical examination, and a review of diagnostic testing, the Veteran had a pulmonary embolism that is asymptomatic following resolution of pulmonary thromboembolism. 

Further, the examiner also wrote that the Veteran does not require anticoagulant therapy, did not require inferior vena cava surgery (or inferior vena cava filter), and did not have evidence of pulmonary hypertension or right ventricular dysfunction. The examiner noted that an echocardiogram, dated March 16, 2005, ruled out pulmonary hypertension or right ventricular dysfunction and that the Veteran was not on Coumadin or any other anticoagulation therapy. The examiner concluded there is no indication for anticoagulation therapy or inferior vena cava filter.

Lastly, the examiner concluded that the Veteran did not meet diagnostic criteria for primary pulmonary hypertension (ruled out on echocardiogram dated March 16, 2005); chronic pulmonary thromboembolism with evidence of pulmonary hypertension (ruled out by normal VQ lung scan and echocardiogram dated March 16, 2005); right ventricular hypertrophy (ruled out on echocardiogram dated March 16, 2005); cor pulmonale (ruled out by normal echocardiogram, normal PFT, and normal physical exam); and pulmonary hypertension secondary to other obstructive disease of pulmonary arteries or veins with evidence of right ventricular hypertrophy or cor pulmonale (ruled out by normal echocardiogram, normal PFT, and normal physical exam). The examiner explained that there was no objective evidence that Veteran had any of above-mentioned complications related to service-connected pulmonary embolism. 

Based on the examiner’s conclusion, a 100 percent disability rating would not be warranted. To reiterate, throughout the period of the appeal, pulmonary function tests of record do not demonstrate any pulmonary impairment. Additionally, there is also no evidence that the Veteran experiences any residuals stemming from her history of pulmonary embolisms such that rating her disability under a different diagnostic code would be appropriate.

The Board has considered the Veteran’s lay statements and finds she is competent to report symptoms she experiences. However, her statements are not competent evidence identify a specific level of disability and relate it to the appropriate diagnostic code, as this requires specialized education, training or experience, which she has not demonstrated that she possesses. See 38 C.F.R. § 3.159 (a). On the other hand, such competent evidence concerning the nature, extent, and severity of the Veteran’s disabilities have been provided by the medical personnel who have examined her during the current appeal, and the medical findings, as provided in the examination reports, directly address the criteria under which each disability is evaluated. As such, the Board finds that the objective medical evidence of record is competent to determine the level of severity of the Veteran’s disability and that the Veteran’s statements in this regard are not competent. 

The Board finds that the Veteran’s allegation that the April 2019 VA examination to be inadequate to be unsupported. See July 2019 Appellant’s Brief and July 2019 statement. VA has satisfied its duty to assist when it provided a medical examination performed by a person who is qualified through education, training, or experience to offer medical diagnosis, statements, or opinions able to provide competent medical evidence, whether that is a doctor, nurse practitioner or physician’s assistant. See Cox v. Nicholson, 20 Vet. App. 563, 569 (2007) (physician’s assistant was competent to perform examination). The Board may assume a that VA medical examiner is competent. See Cox, 20 Vet. App. at 569; Hilkert v. West, 12 Vet. App. 145, 151 (1999) (VA may presume the competence of an examiner, and an appellant bears the burden of persuasion to show that the Board’s reliance on an examiner’s opinion was in error). The examiner had reviewed the file and answered the questions that had been asked to determine what residuals, if any, the Veteran had as a result of the pulmonary embolism. The opinions provided include a discussion of the facts in this case, medical principles, and a thorough rationale, where the examiner cited to specific medical records that substantiated his opinions.

To the extent that the Veteran asserts service connection for obstructive sleep apnea (OSA) is warranted as secondary to pulmonary embolisms, the Board notes that the symptoms associated with OSA are not contemplated in the rating schedule to be symptoms associated with pulmonary embolism but are specifically indicated by the rating schedule as a separately ratable disability under DC 6847. The Veteran filed an application to reopen the claim for service connection for OSA in July 2019. That issue is not currently before the Board. 

For all the reasons laid out above, the Board concludes the preponderance of the evidence is against the claim for a higher rating for pulmonary embolism. The benefit-of-the-doubt rule does not apply, and entitlement to a compensable disability rating for pulmonary embolism is denied. See 38 U.S.C. § 5107(b); 38 C.F.R. § 4.3.

 

 

A. P. SIMPSON

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board D. Cheng, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.