# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-5212

LARRY W. MATTOX, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided April 26, 2021)

*Kenneth M. Carpenter*, of Topeka, Kansas, for the appellant.

*James M. Byrne,* General Counsel; *Mary Ann Flynn*, Chief Counsel; *Kenneth A. Walsh*, Deputy Chief Counsel; and *Brent A Bowker*, Senior Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

Before PIETSCH, ALLEN, and JAQUITH, *Judges*.

ALLEN, *Judge*: In August 2017, Congress enacted the Veterans Appeals Improvement and Modernization Act of 2017 (AMA).[1] The AMA is a sweeping piece of legislation that extensively overhauls the administrative appeals process concerning VA benefits decisions. Importantly, however, Congress did not eliminate the administrative appeals structure existing at the time Congress passed the AMA, leaving the earlier process in place as the "legacy" system. Rather, Congress provided that certain administrative appeals would be processed under the legacy system while others would proceed under the new AMA system. This appeal requires us to consider a significant, albeit narrow, question: How does one determine whether a given administrative appeal is subject to the AMA as opposed to the legacy system?

In this appeal, which is timely and over which the Court has jurisdiction,[2] appellant contests an April 5, 2019, Board of Veterans' Appeals decision that denied entitlement to service connection for an acquired psychiatric disorder, including PTSD. This matter was submitted to a panel of the Court specifically to address whether Congress's AMA-amended notice requirements

---

[1] 115 P.L. 55, 131 Stat. 1105 (Aug. 23, 2017).

[2] *See* 38 U.S.C. §§ 7252(a), 7266(a).

in 38 U.S.C. § 5104(b) apply to legacy appeals. That statutory provision deals with the content of notice that must be provided to claimants when the Secretary makes certain decisions. We hold that, under the plain language of the AMA read as a whole and VA's implementing regulations, the amended notice requirements in section 5104(b) do not apply to legacy appeals. And because appellant's administrative appeal is a legacy appeal, and he has not opted in to the AMA, the Board was under no obligation to comply with section 5104(b).

Once we address the question of the application of section 5104(b) to legacy appeals, we will turn to appellant's arguments regarding the substance of the Board's April 2019 decision. We will explain why the Board's decision is not clearly erroneous, is supported by an adequate statement of reasons or bases, and is based on correct legal principles. Thus, we will affirm.

## I. FACTS AND PROCEDURAL HISTORY

Appellant served the Nation honorably in the United States Navy from October 1967 to October 1971.[3] In July 2015, he filed a claim for entitlement to service connection for PTSD, stating the condition began in service and continued afterwards.[4] At the same time, appellant submitted a disability benefits questionnaire (DBQ) from a private doctor that provided diagnoses of PTSD, depression, and anxiety.[5] The doctor noted appellant's service in the waters of Vietnam and his reports that he had rescued downed pilots and participated in the Tet Offensive during the Vietnam War.[6] The doctor reported that appellant had experienced traumatic events in service that led to his symptoms.[7]

Appellant underwent a VA examination in October 2015. The examiner concluded that appellant did not have PTSD and that his only mental disorder diagnoses were alcohol and cannabis use disorders.[8] The examiner noted appellant's reports of in-service stressors, including recovering airmen from a plane that had been shot down and being aboard a ship offshore during the Tet Offensive, and the examiner found that the stressors met the criteria to support a PTSD

---

[3] Record (R.) at 372.

[4] R. at 251.

[5] R. at 244.

[6] R. at 246.

[7] R. at 247.

[8] R. at 141.

diagnosis.[9] The examiner also noted appellant's symptoms as well as his daily alcohol and cannabis use.[10] After reviewing appellant's claims file, the examiner concluded that appellant did not meet the criteria for a PTSD diagnosis.[11] The examiner also noted that the July 2015 private doctor's diagnosis was not based on the criteria for diagnosing PTSD provided in the current, fifth edition of the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5), but rather on the DSM-IV, which was no longer in use.

In December 2015, the regional office (RO) denied service connection for PTSD.[12] Appellant filed a Notice of Disagreement in January 2016.[13] In October 2016, VA issued a Statement of the Case,[14] and appellant perfected his appeal to the Board by filing a Substantive Appeal in December 2016.[15]

In the decision on appeal, the Board denied service connection for PTSD because "the weight of the evidence does not show that [appellant] has PTSD."[16] The Board found no evidence that appellant had psychiatric symptoms in service. Though the Board acknowledged appellant's in-service stressors, including recovering downed pilots, the Board found the most probative evidence was the October 2015 VA examination report in which the examiner concluded that appellant did not meet the DSM-5 criteria for a current diagnosis of PTSD.[17] Instead, the VA examiner diagnosed alcohol and cannabis use disorder.[18] The Board considered the privately prepared July 2015 DBQ, but found that the private physician's opinion was "based solely on the reported history from [appellant]" and did not address the "lack of psychiatric symptomatology reported less than three months earlier."[19] Furthermore, the private physician did not address appellant's history of substance abuse. Thus, the Board assigned the privately completed DBQ less

---

[9] R. at 145, 148.

[10] R. at 147.

[11] R. at 151.

[12] R. at 122-25.

[13] R. at 105-06.

[14] R. at 35-53.

[15] R. at 33.

[16] R. at 10.

[17] R. at 12.

[18] R. at 13.

[19] R. at 11, 13.

probative weight than the VA opinion. With respect to the diagnosed alcohol and cannabis use disorders, the Board explained that, as a matter of law, those conditions could not be directly service connected and that no evidence of record associated them with any service-connected condition on a secondary basis.[20] This appeal followed.

## II. PARTIES' ARGUMENTS

Appellant's first argument does not relate to the substance of the Board's decision. Instead, he contends that the Board failed to provide him proper notice pursuant to the AMA-amended version of 38 U.S.C. § 5104(b). That statutory provision requires among other things, notice of favorable findings in "decisions by the Secretary." He asserts that though the statute was amended as part of the AMA, it applies to all decisions rendered after February 19, 2019, when the AMA went into effect, including "legacy" matters such as his appeal. Appellant further argues that this statutory provision applies to Board decisions, in addition to the decisions of ROs and other VA agencies of original jurisdiction.

With respect to the substance of the Board's decision, appellant argues that the Board failed to consider whether, based on the circumstances of his service, he had engaged in combat with the enemy, and whether he was entitled to a lower evidentiary standard under 38 U.S.C. § 1154(b). He further contends that the Board failed to consider the provisions of 38 C.F.R. § 3.304(f)(3), which provide special consideration for service connection for PTSD claimed as due to a veteran's fear of hostile military or terrorist activity in service.[21] Appellant asserts that the VA examiner failed to consider the circumstances of his service under these provisions and whether his in-service stressor could support a PTSD diagnosis. Appellant also argues that the Board erred in rejecting the July 2015 DBQ from his private physician without sufficiently explaining its reasons for doing so. Finally, appellant asserts that the Board misapplied the benefit of the doubt doctrine in finding that a preponderance of the evidence weighed against his claim. He argues that the evidence was in equipoise, with one favorable and one unfavorable medical opinion. Appellant also contends that in evaluating the Board decision the Court must take due account of whether

---

[20] R. at 13.

[21] In his opening brief, appellant argued that 38 C.F.R. §§ 3.304(f) and 4.125 are invalid because they are inconsistent with 38 U.S.C. § 1110's definition of a disability. However, appellant withdrew this argument in his reply brief, and the Court will not address it further.

the Secretary properly applied the benefit of the doubt under 38 U.S.C. § 7261(b)(1), and that doing so will demonstrate Board error.

The Secretary defends the Board decision in full and urges affirmance. He argues that section 5104(b) does not apply to legacy appeals because, according to the AMA itself as well as applicable VA regulations, the effective date of the AMA is February 19, 2019, and whether a matter is a legacy appeal or is to be processed under the AMA is determined by whether the *initial* decision leading to the administrative appeal was issued before or after February 19, 2019. Here, the Secretary asserts, the RO's December 2015 rating decision is the relevant initial decision, meaning that this matter involves a legacy appeal. Furthermore, he contends that even if the amended version of the statute could apply to legacy matters, the section does not apply to the Board. Instead, he maintains it applies only to ROs and other VA agencies of original jurisdiction.

As to appellant's arguments concerning the substance of the Board's decision, the Secretary highlights that the Board denied appellant's claim because he does not have a diagnosis of PTSD. Thus, the Secretary argues, appellant's assertions focusing on in-service stressors are unrelated to the Board's reason for denying his claim. The Secretary also contends that the Board provided an adequate statement of reasons or bases for its decision and for assigning greater probative weight to the October 2015 VA examination report than the private doctor's July 2015 DBQ.

Finally, the Secretary asserts that appellant's argument about the application of the benefit of the doubt doctrine ignores the weight the Board assigned to each piece of evidence. Specifically, although, as appellant asserts, the record contains one positive and one negative opinion, the Board found the July 2015 DBQ to be of little probative weight. Thus, the Secretary contends appellant's argument amounts to little more than disagreeing with the Board's weighing of the evidence, which is insufficient to show error. And the Secretary notes that nothing in the statutory command that this Court ensure compliance with the benefit of the doubt rule changes the analysis.

### III. ANALYSIS

We will begin our discussion by considering whether the Board was required to provide appellant notice consistent with AMA-amended section 5104(b). Because we hold that the AMA does not apply to legacy appeals, and appellant's case is clearly a legacy appeal, the Board was not required to provide appellant with section 5104(b) notice. Next, we will address appellant's arguments about the substance of the Board decision. We will first discuss his arguments about his

5

in-service stressor, the combat presumption under 38 U.S.C. 1154(b), and the Board's rejection of the July 2015 DBQ. Then, we turn to a discussion of the benefit of the doubt doctrine as well as our duty to consider the rule of prejudicial error. Because appellant fails to meet his burden of demonstrating error in the Board decision, we will reject his arguments.

### A. The Applicability of AMA-Amended 38 U.S.C. § 5104(b)

Appellant first argues on appeal that the Board erred when it failed to comply with the notice provisions in 38 U.S.C. § 5104 as amended via the AMA. Section 5104(a) states:

> In the case of a decision by the Secretary under section 511 of this title affecting the provision of benefits to a claimant, the Secretary shall on a timely basis, provide to the claimant (and to the claimant's representative) notice of such decision. The notice shall include an explanation of the procedure for obtaining review of the decision.[22]

Subsection (b) goes on to list the information that must be included in the notice required under subsection (a). One of the items included on the statutory list is: an "[i]dentification of findings favorable to the claimant."[23] Appellant particularly focuses on the absence of this information as somehow prejudicing him and, therefore, requiring that we remand this matter.[24]

The question before us is whether 38 U.S.C. § 5104 as amended in the AMA applies to appellant's administrative appeal before the Agency. First, a refresher on the fundamentals of statutory and regulatory interpretation. Statutory interpretation is a pure question of law that the Court reviews de novo.[25] The basics of statutory interpretation are well-established. "In determining the meaning of a statutory provision, 'we look first to its language, giving the words used their ordinary meaning.'"[26] But we do not read statutory words or provisions in isolation. "[T]he plain meaning of any statutory provision must be determined in light of the statutory scheme as a whole, the specific context in which the word or provision at issue is used, and the broader

---

[22] 38 U.S.C. § 5104(a).

[23] 38 U.S.C. § 5104(b)(4).

[24] We note that appellant's arguments concerning the prejudice he suffered as a result of the Agency's failure to provide the notice required under AMA-amended section 5104(b) are both confusing and underdeveloped. However, given our holding that this statutory provision does not apply to his administrative appeal, we need not explore this issue further.

[25] *See Saunders v. Wilkie*, 886 F.3d 1356, 1360 (Fed. Cir. 2018).

[26] *Frederick v. Shinseki*, 684 F.3d 1263, 1269 (Fed. Cir. 2012); *see Artis v. District of Columbia*, __ U.S. __, 138 S. Ct. 594, 603 (2018) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)).

context of the statute as a whole."[27] If the Court concludes that Congress's intent is clear, we end our inquiry and give effect to that intent.[28]

Similarly, the Court reviews the purely legal question of the proper interpretation of regulations de novo.[29] We look first to "the language of the regulation, the plain meaning of which is derived from its text and its structure."[30] If the plain meaning of the regulation is clear on its face, then such plain meaning controls, and "that is 'the end of the matter.'"[31] As with statutes, when we assess the meaning of a regulation, we should not read its words in isolation, but rather in the context of the regulatory scheme and structure as a whole.[32]

We begin with what Congress did when it enacted the AMA against the backdrop of the then-existing administrative structure. Section 2 of the AMA (that is Public Law 115-55) sets out the comprehensive amendments to title 38 of the U.S. Code that Congress made to provide a new means of adjudicating administrative appeals. We need not dwell on the content of the myriad changes Congress made to the VA administrative adjudicative process. Suffice it to say, they were extensive.[33]

Importantly, although Congress created a new adjudicatory system in the AMA, it did *not* eliminate the then-existing system – the "legacy" system.[34] Instead, Congress created a system in which some administrative appeals would be processed under the legacy system and others would be processed under the newly enacted AMA.[35] This concurrent system of adjudication is a centerpiece of Congress's design, as one can see from other sections of the AMA dealing with

---

[27] *Hornick v. Shinseki*, 24 Vet.App. 50, 52 (2010); *see King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (articulating same general principle); *Imazio Nursing, Inc. v. Dania Greenhouses*, 69 F.3d 1560, 1564 (Fed. Cir. 1995) (same).

[28] *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

[29] *Langdon v. Wilkie*, 32 Vet.App. 291, 296 (2020).

[30] *See Good Samaritan Hosp. v. Shalala*, 508 U.S. 402 (1993); *Goodman v. Shulkin*, 870 F.3d 1383, 1386 (Fed. Cir. 2017).

[31] *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)); *see also Kisor v. Wilkie*, __ U.S. ___, ___, 139 S. Ct. 2400, 2415 (2019).

[32] *King v. Shinseki*, 26 Vet.App. 484, 488 (2014).

[33] *See* VETERANS BENEFITS MANUAL § 12.1.1, at 881-82 tbl. 12-1 (LexisNexis 2020-21) (summarizing changes to the administrative process under the AMA).

[34] *See, e.g.*, Pub. L. 115-55 § 6; 38 C.F.R. § 3.2400(b) (2020).

[35] *See* VETERANS BENEFITS MANUAL § 12.2, at 886-87 (discussing how to determine whether an appeal is subject to the legacy system or the AMA).

administrative matters. For example, section 3 of the AMA is entitled "Comprehensive Plan for Processing of Legacy Appeals and Implementing New Appeals System."[36] Here, Congress required VA to submit a comprehensive plan for implementing the AMA while continuing to process appeals under the legacy system.[37] And section 4 allowed VA to develop programs to test adjudication of appeals concurrently under the legacy system and what would become the AMA.[38]

In complying with section 3, VA produced multiple status reports, both before and after the Agency implemented the AMA, and in each report the Agency spent considerable time explaining how it would adjudicate cases under both the legacy and AMA systems, including the resources needed to operate both concurrently at the RO and Board levels.[39] The attention to both systems in these reports also highlights VA's understanding that Congress expected that the legacy and AMA processes would operate concurrently.

So, we know that Congress intended for the legacy system and the AMA system to operate concurrently. In fact, no one seriously disputes this point. This brings us to how one determines which administrative appeals fall within each system. Congress addressed this issue in the AMA under the rubric of what it referred to as "applicability," setting out certain rules in the statute's section 2(x).[40] A note to section 5104 provides that section 5104 (as with all of the AMA) is "applicable to all claims for which notice of a decision . . . is provided by the Secretary on or after the later of the date that is 540 days after Aug. 23, 2017" or "30 days after the date required certifications and performance outcomes are submitted to the appropriate committees of Congress."[41]

The applicability question actually contains two, interrelated parts. The first concerns a date, that is, the point in time matters for assessing whether a given administrative appeal falls

---

[36] Pub. L. No. 115-55, § 3, 131 Stat. 1105 (Aug. 23, 2017).

[37] *Id.*

[38] Pub. L. No. 115-55, § 4.

[39] *See* U.S. DEP'T OF VETERANS AFFAIRS, COMPREHENSIVE PLAN FOR PROCESSING LEGACY APPEALS AND IMPLEMENTING THE MODERNIZED APPEALS SYSTEM 5 (Nov. 2018 update), https://www.benefits.va.gov/benefits/appeals-reports.asp (noting that the legacy and new systems will operate concurrently); *see also* U.S. DEP'T OF VETERANS AFFAIRS, COMPREHENSIVE PLAN FOR PROCESSING LEGACY APPEALS AND IMPLEMENTING THE MODERNIZED APPEALS SYSTEM 12 (Aug. 2019) (discussing the Veterans Benefits Administration's two distinct workloads).

[40] *See* Pub. L. No. 115-55, § 2(x).

[41] 38 U.S.C. § 5104; *see also* Pub. L. No. 115-55, § 2(x).

under the AMA or the legacy system. Here, there is no dispute about the relevant date. Pursuant to the AMA, VA set the effective date of the new appeals system as February 19, 2019, following the statutorily required certification to congressional committees.[42] We do not understand appellant to dispute the relevant date for applicability of the AMA, which includes by necessity the applicability of section 5104(b).

This leads to the second applicability question: What must occur on or after February 19, 2019, such that an administrative appeal will be subject to the AMA? Again, for guidance we turn to VA's implementing regulations. In particular, 38 C.F.R. § 3.2400 provides that the AMA applies to all claims "[f]or which VA issues notice of an initial decision on or after the effective date of the modernized review system" or "[w]here a claimant has elected review of a legacy claim under the modernized review system."[43] So, to determine the system under which an appeal is to be processed, we ask whether the initial decision that led to an administrative appeal was issued on or after February 19, 2019. If it was issued on or after that date, then the appeals falls within the AMA. If not, the appeal is a legacy appeal to be processed under the "old" system. Congress allowed one exception, where under certain circumstances, claimants whose appeals would normally be processed in the legacy system may opt in to the AMA.[44] In fact, VA offers legacy claimants many opportunities to access the AMA system, with elections allowed after any Statement of the Case (SOC) or Supplemental SOC (SSOC) is issued.[45]

Having concluded that the plain meaning of the AMA and VA's implementing regulations requires that for the AMA to apply, an initial decision on a claim for which an administrative appeal is being processed has been issued on or after February 19, 2019, our resolution of appellant's argument is simple. As the Board recognized, here the initial decision that led to appellant's administrative appeal was a December 2015 rating decision that denied service connection for PTSD.[46] To state the obvious, the December 2015 rating decision was issued well

---

[42] 84 Fed. Reg. 2449-01 (Feb. 7, 2019).

[43] 38 C.F.R. § 3.2400(a). *see also* 38 C.F.R. § 19.2(b) (2020) (defining the effective date of AMA with respect to Board decisions).

[44] *See* Pub. L. No. 115-55, §2(x)(3); 38 C.F.R. § 3.2400(c).

[45] *See* U.S. DEP'T OF VETERANS AFFAIRS, COMPREHENSIVE PLAN FOR PROCESSING LEGACY APPEALS AND IMPLEMENTING THE MODERNIZED APPEALS SYSTEM 6 (2017) (noting that legacy claimants may opt in to the AMA system each time a new SOC or SSOC is issued, both before and after the effective date of the AMA).

[46] R. at 6; *see* R. at 122-25 (Dec. 2015 rating decision).

before the AMA's February 19, 2019, effective date. Furthermore, appellant does not argue, nor does the record show, that he elected to have his claim processed under the AMA by opting in to that system.

In fact, the very process by which appellant appealed his claim to the Board illustrates the claim was not adjudicated under the AMA. He was issued an SOC and required to file a Substantive Appeal,[47] hallmarks of the pre-AMA appeals process that have been omitted from the AMA procedure.[48] And there is no indication that appellant ever objected to the adjudicative process VA employed to address his administrative appeal. In sum, we hold that the Board was not required to comply with the notice requirements of section 5104(b) because appellant's claim is a legacy appeal subject to the legacy appeals process, not the AMA.

Appellant resists this straightforward application of the AMA and its implementing regulations. He contends the AMA applies to his claim because the Board issued the decision on his underlying appeal after February 19, 2019. For two principal reasons the appellant's argument lacks merit. First, his position effectively undermines Congress's plan to have VA operate concurrent systems for adjudicating administrative appeals. Congress could arguably have made the AMA applicable to all appeals pending on the date of its enactment. But, as we have explained, it did not do so. Yet, if appellant's position is correct – that is, that any decision rendered after February 19, 2019, not just the initial one, makes an appeal subject to the AMA – for all practical purposes there would be no legacy system. Effectively, according to appellant's position, every administrative appeal lodged before February 19, 2019, would be part of the AMA because as soon as VA issued any decision on that appeal after February 19, 2019, that legacy appeal would be converted to an AMA appeal. In other words, under appellant's view of the world, the legacy system was one that would disappear automatically every time VA issued a decision on an underlying legacy appeal after February 19, 2019. If Congress had meant that to be the case, something that would be truly remarkable, we think Congress would have been clear that it intended to create this rather bizarre conversion process.

---

[47] *See* R. at 33, 35-53.

[48] *See Monk v. Wilkie*, 978 F.3d 1273, 1275 (Fed. Cir. 2020) (explaining that the AMA "eliminated or simplified" steps after a claimant files a Notice of Disagreement); *see also* VETERANS BENEFITS MANUAL § 12.1.1, at 881 (LexisNexis 2020-21).

Moreover, why would Congress have provided legacy claimants a procedure to affirmatively opt in to the AMA system after an SOC or SSOC is issued in the legacy system? There would have been no need to opt in, because any VA decision would have automatically converted a legacy appeal into an AMA appeal. In addition, if legacy appeals disappear as appellant suggests, we wonder why Congress would have required such comprehensive planning from VA for the operation of concurrent systems as well as allowed VA to adopt pilot programs to test their simultaneous operation?[49] In short, appellant's argument is at odds with nearly everything Congress did when it created the AMA without abolishing the legacy system for processing appeals.

The second problem with appellant's position is that it is entirely at odds with § 3.2400's clear definition of which appeals are subject to the AMA. That regulation implements Congress's will as reflected in the plain language and structure of the AMA read as a whole. Appellant never explains why that regulation is not consistent with the AMA as a whole, and we cannot see how it is not consistent.[50] Our job is not to second guess Congress and the Agency. Rather, we are to interpret the plain language of the statute and relevant implementing regulations and to ensure the Board had complied with them.[51]

In sum, appellant's argument is inconsistent with both the plain language of the AMA and its implementing regulations as well as the comprehensive, concurrent appeals processes Congress created. And we reiterate: Because appellant's appeal is a legacy claim, the Board was not required to provide notice consistent with section 5104(b) as amended in the AMA. So, appellant fails to meet his burden of showing prejudice in the Board's failure to provide him specific notice of its favorable findings.[52]

---

[49] Pub. L. No. 115-55, §§ 3,4.

[50] As we have explained, we believe the AMA, read as whole, plainly undermines appellant's argument. But even if we considered the statute ambiguous about the triggering event for the AMA to apply to an appeal, VA's implementing regulation, 38 C.F.R. § 3.2400, adopts a permissible interpretation of such an assumed ambiguity. As an alternative holding, we would defer to VA's regulation under *Chevron,* 467 U.S. at 844-45. *See Burkhart v. Wilkie*, 30 Vet.App. 414, 425 n.3 (2019) (providing *Chevron* rationale as alternative to plain meaning interpretation), *aff'd*, 971 F.3d 1363 (Fed. Cir. 2020).

[51] *See* 38 U.S.C. § 7261(a)(1) (providing that the Court may interpret statutory and regulatory provisions); *see also Boyer v. West*, 210 F.3d 1351, 1356 (Fed. Cir. 2000) (noting that courts "can only interpret the statutes that are enacted by Congress . . . [and] are simply powerless to amend any statutory provision").

[52] *Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table).

We stress one final point before we turn to appellant's allegations of error concerning the substance of the Board's decision. We do not reach the parties' dispute about whether section 5104(b) applies to Board decisions or only initial determinations of an RO or another VA agency of original jurisdiction. We need not decide that question (or any other question concerning the substance of the AMA for that matter) today because appellant's appeal is a legacy claim. As we noted earlier, the question we addressed concerning the applicability of the AMA is significant for sure. But it is also narrow.

*B. Appellant's Substantive Assertions of Board Error*

Having disposed of appellant's AMA-related procedural argument, we move on to address his allegations concerning the substance of the Board's decision. We first consider his contentions regarding VA's treatment of his in-service stressor as well as the combat presumption under 38 U.S.C. § 1154(b). Next, we deal with appellant's arguments related to the Board's treatment of the July 2015 privately prepared DBQ he submitted. Finally, we discuss appellant's assertions concerning the benefit of the doubt doctrine. As we will explain, none of appellant's arguments convince us the Board erred.

1. In-Service Stressor and Combat Presumption

Establishing service connection generally requires evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability.[53] Establishing service connection for PTSD in particular requires (1) evidence of a current diagnosis of PTSD consistent with the DSM-5;[54] (2) credible supporting evidence that a claimed in-service stressor occurred; and (3) competent evidence of a causal nexus between the current condition and the in-service stressor.[55]

We review the Board's findings regarding service connection for clear error.[56] The Court will overturn the Board's findings only if the record offers no plausible basis for its decision and the Court is left with a definite conviction that the Board's decision was in error.[57] As with all its findings on a material issues of fact and law, the Board must support its decision with respect to

---

[53] *See Hickson v. West*, 12 Vet.App. 247, 253 (1999); 38 C.F.R. § 3.303(a) (2020).

[54] 38 C.F.R. § 4.125(a) (2020).

[55] 38 C.F.R. § 3.304(f) (2020).

[56] *Dyment v. West*, 13 Vet.App. 141, 144 (1999).

[57] *See Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990).

entitlement to service connection with an adequate statement of reasons or bases that enables a claimant to understand the precise bases for the Board's decision and facilitates review in this Court.[58]

In its decision, the Board's analysis of service connection for PTSD begins and ends with the first element, namely the lack of a DSM-5 compliant diagnosis of PTSD.[59] Thus, even though the Board acknowledged appellant's in-service stressors,[60] those stressors were not key to the Board's denial of benefits. This is important because appellant's arguments focus on what happened in service, ignoring the missing diagnosis. Thus, he fails to show how any alleged error is prejudicial.

Appellant first argues that the Board did not consider whether the circumstances of his service entitled him to a lower evidentiary standard under 38 U.S.C. § 1154(b), which eases the burden on combat veterans to satisfy the in-service element of service connection.[61] The Board discussed that provision in its decision yet ultimately denied appellant's claim on a different basis, namely, that he had no PTSD diagnosis.[62] In his briefs, appellant fails to explain how a further discussion of the combat presumption would affect the Board's unfavorable finding that he does not have a DSM-5-consistent diagnosis of PTSD. And to be clear, we cannot see how it would.

In his reply brief, appellant cites *Reeves v. Shinseki*,[63] stating that in that decision the Federal Circuit held that failure to apply the combat presumption was clear and unmistakable error. Although that is true, appellant fails to provide the context of that holding. The Federal Circuit in *Reeves* held that the Board must apply section 1154(b)'s combat presumption to a veteran's claimed disability even if he establishes an in-service incident or injury.[64] In other words, it was error in that case for the Board not to consider whether Mr. Reeves had hearing loss while in service,

---

[58] 38 U.S.C. § 7104(d)(1); *Gilbert*, 1 Vet.App. at 57.

[59] The Board did find diagnoses of alcohol and cannabis use disorder but found those diagnoses unrelated to appellant's service. Appellant raises no argument as to this aspect of the Board's decision, so we deem any appeal of that issue abandoned. *See Pederson v. McDonald*, 27 Vet.App. 276, 284 (2015) (en banc).

[60] *See* R. at 12.

[61] *See Dalton v. Nicholson*, 21 Vet.App. 23, 37 (2007).

[62] *See* R. at 9.

[63] 682 F.3d 988 (Fed. Cir. 2012).

[64] *Id.* at 999.

despite the evidence that he had suffered from acoustic trauma in service.[65] Nothing like this scenario appears before us here. The Board did not need to reach the question whether appellant here had PTSD in service because it found that he does not have it currently. And regardless of whether he experienced psychiatric symptoms in service, the lack of a DSM-5 diagnosis now prevents entitlement to service connection because this Court has held that a valid DSM-5 diagnosis is required to compensate a psychiatric disability.[66] Thus, appellant has not met his burden of demonstrating prejudicial error in the Board's failure to discuss section 1154(b) more thoroughly (even assuming the Board's discussion was somehow inadequate).[67]

Appellant's next argument follows a similar trajectory. He contends that the Board did not properly apply 38 C.F.R. § 3.304(f)(3), a regulatory provision providing a relaxed evidentiary standard for those veterans who claim an in-service stressor involving a fear of hostile military or terrorist activity. Again, this relaxed evidentiary standard is premised on a DSM-5 diagnosis of PTSD,[68] which appellant does not have. With respect to his claimed in-service stressor, the October 2015 VA examiner considered appellant's report of retrieving downed pilots off the coast of Vietnam,[69] finding that the stressor related to his fear of hostile military or terrorist activity and sufficient to support a PTSD diagnosis.[70] Despite this stressor, however, the examiner did not diagnose PTSD under the DSM-5. The Board considered the examiner's findings and relied on them to deny service connection. Once again, appellant does not meet his burden of demonstrating prejudicial error in the Board's analysis.[71]

Appellant cites two Federal Circuit decisions to argue the existence of a different test for establishing service connection for PTSD claimed as resulting from a fear of hostile military or terrorist activity.[72] However, in both decisions, the court acknowledges that the regulation requires

---

[65] *Id.*

[66] *Martinez-Bodon v. Wilkie*, 32 Vet.App. 393, 404 (2020).

[67] *Hilkert*, 12 Vet.App. at 151.

[68] *See* 38 C.F.R. § 3.304(f).

[69] R. at 144.

[70] R. at 148.

[71] *See Hilkert*, 12 Vet.App. at 151.

[72] *See* Appellant's Brief (Br.) at 10-11 (citing *Sanchez-Navarro v. McDonald*, 774 F.3d 1380 (Fed. Cir. 2014); *Nat'l Org. of Veterans' Advocates v. Sec'y of Veterans Affairs*, 669 F.3d 1340 (Fed. Cir. 2012)). These cases were decided when VA regulations referred to the DSM-IV; those regulations have since been updated to reflect the manual's current edition, DSM-5. *See* 38 C.F.R. § 4.125(a).

a DSM diagnosis of PTSD to establish service connection even under the lower evidentiary standard of § 3.304(f)(3). We just do not see how the cited decisions illustrate error in the Board's decision, and appellant does not fill in the blanks. Thus, we reject this underdeveloped argument.[73]

## 2. Treatment of the July 2015 Private DBQ

With respect to appellant's argument that the Board erroneously rejected the July 2015 private DBQ, he alleges that the Board "failed to explain the inaccurate factual premise" the private physician relied upon, "failed to explain why his opinion was not adequate," and "failed to explain how [the] opinion lacked supporting data which was not connected to his conclusions."[74] In its decision, the Board specifically noted that it assigned little probative weight to the July 2015 private physician's opinion because, based on the Board's assessment of the opinion, it "does not appear that the examiner reviewed [appellant's] service treatment or personnel records" and the opinion was "based solely on the reported history from [appellant]."[75] The Board also noted that the examiner did not account for a "lack of psychiatric symptomatology reported less than three months earlier" or "the normal psychiatric examination at service discharge in 1971."[76] The Board further found that the examiner did not discuss appellant's history of substance abuse. Thus, the Board concluded that because "the examiner appears to have based the opinion on [appellant's] inaccurate report of a 45 [year] history of psychiatric disability," the Board found the opinion of little probative value.[77]

The Board clearly explained why it found the July 2015 DBQ entitled to little probative weight. The Board noted that because the DBQ was based on appellant's reports, did not account for normal psychiatric findings in the record, and did not discuss his history of substance abuse, the examiner's opinion was based on an inaccurate factual premise and lacked appropriate support for its conclusions. We see no clear error with the Board's findings as to the weight to be assigned to the July 2015 DBQ and its rejection of the PTSD diagnosis it contained, and appellant does not meet his burden of showing error in this regard.[78] In short, the Board performed its function as

---

[73] *See Locklear v. Nicholson*, 20 Vet.App. 410, 416-17 (2006).

[74] Appellant's Br. at 13.

[75] R. at 11.

[76] *Id.*

[77] *Id.*

[78] *Hilkert*, 12 Vet.App. at 151.

factfinder to assess the evidence before it. We reject appellant's suggestion that we substitute our opinion for that of the Board.

### 3. Benefit of the Doubt Doctrine

As with appellant's other substantive arguments discussed above, his assertions regarding the benefit of the doubt doctrine under 38 U.S.C. § 5107(b) are unavailing. "When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant."[79] However, when the Board determines that the preponderance of the evidence weighs against an appellant's claim, "it necessarily has determined that the evidence is not 'nearly equal' or 'too close to call,' and the benefit of the doubt rule therefore has no application."[80]

Appellant argues that because the evidence of record consisted of one medical opinion that found a diagnosis of PTSD and one that found no such diagnosis, the evidence was in equipoise and he was entitled to the benefit of the doubt. Appellant's argument, however, overlooks that the Board assigned less probative weight to the PTSD diagnosis contained in the July 2015 DBQ. The Board found that the diagnosis was not based on appellant's full disability picture but instead on the examiner's reliance on appellant's reported history, which did not include his history of substance abuse or psychiatric findings revealing no abnormality. Thus, the evidence was not in approximate balance. The Board assigned more weight to one piece of evidence – the October 2015 VA examination report – than to the other piece of evidence – the July 2015 DBQ – consistent with its role as factfinder.[81] In other words, one does not assess the question under the benefit of the doubt doctrine merely by counting pieces of evidence. The doctrine considers the *quality* of the evidence, not merely the *quantity*. Because the Board found that the preponderance of the evidence weighed against appellant's claim, it was not required to apply the benefit of the doubt doctrine.

Appellant has not demonstrated error in the Board's determination in this regard. As discussed above, the Board's finding that the July 2015 DBQ was entitled to little probative weight

---

[79] 38 U.S.C. § 5107(b); *see* 38 C.F.R. § 3.102 (2020).

[80] *Ortiz v. Principi*, 274 F.3d 1361, 1365 (Fed. Cir. 2001).

[81] *See Washington v. Nicholson*, 19 Vet.App. 362, 369 (2005); *Owens v. Brown*, 7 Vet.App. 429, 433 (1995) (holding that the Board is responsible for assessing the credibility and weight of evidence and that the Court may overturn the Board's decision only if it is clearly erroneous).

was not clearly erroneous. To the extent that appellant disagrees with the weight assigned to the evidence of record, such an argument does not warrant remand because it is the Board's prerogative as factfinder to assess the evidence and determine the weight to assign to that evidence.[82] Thus, the Court finds no error with the Board's finding that the evidence of record was not in approximate balance and that a preponderance of the evidence supported denial.

Appellant also argues that the Court has a statutory duty to "take due account of the Secretary's application of section 5107(b)" in reviewing the Board's decision.[83] He asserts that this language was added to the statute in 2002 and that the Court has not addressed what this language means. We certainly have the obligation to ensure the Board's compliance with the benefit of the doubt rule. And it may be that, in an appropriate case, we would need to address whether the addition of section 5107(b) in 2002 provides some special privilege to our consideration of the Board's application of the benefit of the doubt doctrine. We decline to address that issue here. No matter how interesting this question may be, we need not reach it in this appeal. Here, we are constrained by the Board's determinations as to the weight assigned to the evidence of record, determinations that are not clearly erroneous and that are adequately supported. Stated another way, no matter how "aggressive" the Court's role is in reviewing the Board's application of the benefit of the doubt doctrine might be, it would not change the fact that the Board's finding that the preponderance of evidence in this case weighed against the claim was not clearly wrong.

### C. Summary

In sum, appellant's administrative appeal concerning PTSD is one subject to adjudication under the legacy system. The appeal is not subject to the AMA, including the notice requirements of section 5104. Therefore, there was no need for the Board to comply with those provisions with respect to its adjudication of appellant's administrative appeal. Additionally, appellant's arguments concerning the merits of the Board's decision on appeal are unpersuasive. He has failed to show prejudicial error with respect to the Board's findings that he does not have a DSM-5 diagnosis of PTSD and that the VA examination of record was entitled to more probative weight than a DBQ from appellant's private doctor. Appellant also failed to relate his arguments about his in-service

---

[82] *See Madden v. Gober*, 125 F.3d 1477, 1481 (Fed. Cir. 1997); *Owens v. Brown*, 7 Vet.App. 429, 433 (1995).

[83] 38 U.S.C. § 7261(b)(1).

stressors and the combat presumption to the reason the Board denied his claim, namely a lack of a current diagnosis of PTSD. Thus, we will affirm the Board's decision.

## IV. CONCLUSION

After consideration of the parties' briefs, the record on appeal, and the governing law, the Court AFFIRMS the April 5, 2019, Board decision.