NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DOUGLAS D. DIETRICH,**

*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**

*Respondent-Appellee*

---

2024-1868

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 23-1155, Judge Grant Jaquith.

---

Decided:  December 3, 2024

---

DOUGLAS D. DIETRICH, Pasco, WA, pro se.

BRITTNEY M. WELCH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee.  Also represented by BRIAN M. BOYNTON, WILLIAM JAMES GRIMALDI, PATRICIA M. MCCARTHY.

---

Before LOURIE, SCHALL, and STOLL, *Circuit Judges*.

PER CURIAM.

Douglas D. Dietrich, a veteran, appeals from a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court"). SAppx1–14.[1] He seeks an earlier effective date for service connection for obstructive sleep apnea, diabetes mellitus, and hypertension, which are secondary to his service-connected right knee disability. For the following reasons, we dismiss-in-part and affirm-in-part.

## BACKGROUND

Mr. Dietrich served his country in the U.S. Marine Corps from February 1979 to March 1990 and from June 1990 to September 1992. After he left service, the Department of Veterans Affairs ("VA") regional office ("RO") granted him service connection for bilateral knee disability in September 1993 with an effective date of September 29, 1992. Initially, the rating was noncompensable, but in October 1995, the VA increased the rating to 10% for each knee.

In December 2003, Mr. Dietrich requested an increase in his right knee disability rating, alleging increased instability. An October 2004 examination revealed that Mr. Dietrich walked normally and had no difficulty rising from a chair, but he also reported he had gained weight since January 2003 and was taking 600 milligrams of Motrin three times a day to manage his pain. In a January 2005 rating decision, the RO maintained the 10% rating for each knee and noted that there was no objective medical evidence of limited motion or instability of the right knee warranting a higher rating. Mr. Dietrich filed a notice of disagreement ("NOD") contesting this rating decision.

---

[1] "SAppx" refers to the supplemental appendix attached to Appellee's Informal Brief, ECF No. 5.

In May 2006, Mr. Dietrich was diagnosed with diabetes mellitus. Around this time, he also reported a "recent significant increase in knee pain with new symptom[s] of popping and catching." *Dietrich v. McDonough*, No. 23-1155, 2024 WL 861148, at *2 (Vet. App. Feb. 29, 2024) (alteration in original). He was diagnosed with severe obstructive sleep apnea ("OSA") in September 2006. In the same month, an orthopedic doctor evaluated Mr. Dietrich and found that his "activities of daily living, including bending, lifting, [and] recreation are limited because of the ongoing issues of the right knee," and noted "increased pain with motion and repetitive use." *Id.* In December 2006, Mr. Dietrich withdrew his claim for an increased right knee rating, among other claims, but attempted to reinstate it in February 2007. *Id.* The VA subsequently notified Mr. Dietrich that, under the regulations in effect at the time, the withdrawal of his claims was effective upon receipt and the attempted reinstatement was invalid. *Id.* at *8.

In April 2008, Mr. Dietrich filed the claims at issue in this appeal. He sought service connection for his OSA, diabetes mellitus, and hypertension, all as secondary to his service-connected right knee disability. Mr. Dietrich enclosed a statement from a physician linking his weight gain to his right knee condition and opining that the additional weight had contributed to the OSA, diabetes mellitus, and hypertension. After the Board initially denied the claims, it granted them in March 2016 because all three conditions were "aggravated by [a] service-connected disability." *Id.* at *3 (alteration in original). In a July 2016 rating decision, the RO assigned a 50% rating for his OSA, a 20% rating for his diabetes mellitus, and a noncompensable rating for his hypertension, all with an April 1, 2008, effective date.

In October 2016, Mr. Dietrich filed a NOD contesting the effective date for all three claims. He argued that, because all were secondary to his knee claim, they should

have the same effective date as his knee claim: September 1992.

The RO denied an earlier effective date for the three claims and Mr. Dietrich appealed to the Board. In a decision dated October 15, 2021, the Board denied an earlier effective date because April 1, 2008, was the date the claims were first received by the VA and the claims were received more than one year after Mr. Dietrich's separation from service.[2] The Board also addressed Mr. Dietrich's argument about secondary service connection and explained that the "requirement that a secondary disability be considered a part of an original disability does not establish that the original disability and the secondary disability must receive identical effective dates." SAppx24. The Board determined that there was no basis for an earlier effective date because the "record does not show any communication that could be interpreted as a claim for benefits for sleep apnea, diabetes mellitus, or hypertension prior to the receipt of the April 1, 2008 claim." SAppx23. Mr. Dietrich appealed the Board's decision to the Veterans Court.

---

[2] Generally, the effective date for a service-connected disability is the date of receipt of the claim by the VA or the date entitlement arose, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400. If a claim is received within one year after separation from service, the effective date will be the day following separation from service or the date entitlement arose. 38 U.S.C. § 5110(a)–(b)(1); 38 C.F.R. § 3.400(b)(2). Section 3.400 also governs secondary service-connected disabilities and the normal rules for effective dates are applicable. *Ellington v. Peake*, 541 F.3d 1364, 1369 (Fed. Cir. 2008) ("[T]he effective date for secondary conditions is governed by section 3.400, which establishes the effective date as the 'date of receipt of claim, or [the] date entitlement arose, whichever is later.'").

Before the Veterans Court, Mr. Dietrich changed his argument to assert that during the development of his December 2003 claim for increased right knee disability, the VA received copies of his treatment records that reasonably raised claims for secondary service connection for OSA, diabetes mellitus, and hypertension. The Veterans Court interpreted this argument to assert that the Board provided an inadequate statement of reasons or bases by failing to address (1) "whether the claims for secondary service connection for OSA, diabetes mellitus, and hypertension were 'reasonably raised' by the veteran's VA treatment records during the adjudication of his right knee disability rating"; and, if so, (2) whether, under 38 C.F.R. § 3.156(b), these records "were 'new and material evidence' that would allow the secondary service connection claims to take on the same" effective date of "the increased rating claim for the primary disability." *Dietrich*, 2024 WL 861148, at *4.

Although the Veterans Court determined Mr. Dietrich did not clearly argue to the Board that his right knee disability claim reasonably raised secondary service connection for OSA, diabetes mellitus, and hypertension, the Veterans Court reviewed the Board's determination of the proper effective date and whether the record reasonably raised entitlement to his secondary service-connected conditions prior to the April 2008 date of the claims. The Veterans Court considered the evidence recited above and noted Mr. Dietrich failed "to point to any specific evidence that links his OSA, diabetes mellitus, or hypertension to his service-connected right knee disability" prior to his current effective date of April 1, 2008. *Id.* at *7. It observed that such evidence was not in the record until April 2008, when Mr. Dietrich submitted evidence that his knee condition had contributed to weight gain and subsequently his OSA, diabetes mellitus, and hypertension. *Id.* The Veterans Court held that "[b]ecause the treatment records that [Mr. Dietrich] relies on do not

suggest that these claims were reasonably raised by the record, the Court cannot fault the Board for failing to explicitly discuss this theory of entitlement." *Id.*

Mr. Dietrich also argued that he had additional right knee claims, other than his withdrawn right knee instability claim, pending when he was diagnosed with OSA, diabetes mellitus, and hypertension that reasonably raised secondary service connection. *Id.* The Veterans Court considered four filings that Mr. Dietrich pointed to as evidence he had other right knee claims pending: (1) a denied claim that Mr. Dietrich did not appeal that he may have withdrawn in December 2006; (2) a letter that did not clearly relate to a knee claim, other than the withdrawn claim, or identify the related claim date such that the Veterans Court could determine if the claim was actually pending when the relevant conditions were reasonably raised by the record; (3) a submission related to a surgery that "took place after the secondary disabilities had allegedly been raised by the record"; and (4) the letter seeking to reinstate his withdrawn appeal. *Id.* at \*8. Mr. Dietrich bore the burden of demonstrating error in the Board's decision and the Veterans Court determined Mr. Dietrich "has not convincingly shown that there were other right knee claims pending . . . and the Court cannot conclude that it was clear error for the Board not to discuss this issue." *Id.* (citing *Hilkert v. West*, 12 Vet. App. 145, 151 (Vet. App. 1999) (en banc), *aff'd*, 232 F.3d 908 (Fed. Cir. 2000) (per curiam)).

Even assuming that Mr. Dietrich had, in fact, identified evidence linking his OSA, diabetes mellitus, or hypertension to his service-connected disability prior to his current effective date of April 1, 2008, the Veterans Court explained that our court has already rejected his legal theory—that a secondary service-connected claim is "new and material evidence within the meaning of 38 C.F.R. § 3.156(b)" and takes on the same effective date as the primary claim. *Id.* at \*9 (brackets omitted) (citing

*Manzanares v. Shulkin*, 863 F.3d 1374, 1375 (Fed. Cir. 2017)). Because "his legal argument for an earlier effective date has been rejected by controlling caselaw from the Federal Circuit," the Veterans Court held the Board did not err when it denied an earlier effective date for Mr. Dietrich's claims. *Id.* at \*10.

Mr. Dietrich timely appealed to this court.

## DISCUSSION

On appeal Mr. Dietrich asserts seven main sources of error for review by this court: (1) the Veterans Court erred in its review of the application of 38 C.F.R. §§ 3.310 and 3.156(b) to his case; (2) the Veterans Court erred in its determination that *Manzanares* is controlling law in this matter; (3) the Veterans Court's erred in its determination that his secondary service connection claims were not reasonably raised by the record prior to the receipt of his claim for secondary service connection; (4) the Veterans Court erred in determining that the Board provided adequate reasons and bases for its decision; (5) he was not given the benefit of the doubt; (6) the Veterans Court failed to decide the issue of his rating for hypertension; and (7) the Veterans Court erred by failing to consider the effect of the lower hypertension threshold for individuals with diabetes.

Many of Mr. Dietrich's arguments, including his argument the Veterans Court erred in its review of the application of 38 C.F.R. §§ 3.310 and 3.156(b) to the facts of his case, fall outside of our jurisdiction because they challenge factual determinations or applications of law to fact. 38 U.S.C. § 7292(d)(2); *Butler v. Shinseki*, 603 F.3d 922, 926 (Fed. Cir. 2010) ("We agree that the factual findings of when a disability was claimed or service connection established are not subject to our review."). This court has very limited jurisdiction when reviewing decisions of the Veterans Court. We have jurisdiction only "with respect to the validity of a decision of the [Veterans]

Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the [Veterans] Court in making the decision."    38 U.S.C. § 7292(a). "Except to the extent that an appeal . . . presents a constitutional issue, [we] may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case."[3] *Id.* at § 7292(d)(2).  Because we are not permitted to review fact findings or application of a law or regulation to the facts, we lack jurisdiction to review Mr. Dietrich's arguments numbered 1, 3, 4, and 5 above.

We do, however, have jurisdiction to review the following issues.

Turning first to Mr. Dietrich's argument that *Manzanares* is not controlling law in this matter (his second alleged source of error), we possess jurisdiction to consider "[w]hether the Veterans Court applied a correct legal standard," and we review that question de novo. *Conyers v. McDonough*, 91 F.4th 1167, 1170 (Fed. Cir. 2024).  In *Manzanares*, we rejected the argument that a

---

[3]    Mr. Dietrich's informal brief states: "Due process. The [RO] failed to follow the correct regulations and laws in assigning a correct effective date."  Appellant's Br. 2. There is no other mention of due process, and we thus do not perceive this language to raise a genuine constitutional issue.  The informal brief simply does not specify how any due process rights were violated.  *Id.*  Nor did the Veterans Court address any constitutional issues.    Labeling arguments as constitutional does not automatically confer jurisdiction on this court.  *Helfer v. West*, 174 F.3d 1332, 1335 (Fed. Cir. 1999) ("To the extent that he has simply put a 'due process' label on his contention that he should have prevailed on his EAJA claim, his claim is constitutional in name only.").

veteran's "secondary service connection . . . was 'part' of her pending [primary claim] by virtue of § 3.310(a). . . [and] that § 3.156(b) required that the VA treat the 'new and material evidence'—*i.e.*, her [secondary service connection] claim—'as having been filed on'" the date of her primary claim. 863 F.3d at 1376.

Here, Mr. Dietrich contends *Manzanares* is not controlling because that case involved a "non-aggravated secondary service-connected claim." Appellant's Br. at 6–7. Both Ms. Manzanares' and Mr. Dietrich's claims involve a "disability which is proximately due to or the result of a service-connected disease or injury" rather than the aggravation of non-service-connected disabilities. 38 C.F.R. § 3.310(a); SAppx23 (applying secondary-service-connection pursuant to 38 C.F.R. § 3.310(a) to Mr. Dietrich); *but see id.* § 3.310(b) ("Any increase in severity of a nonservice-connected disease or injury that is proximately due to or the result of a service-connected disease or injury, and not due to the natural progress of the nonservice-connected disease, will be service connected."). We are not convinced that the alleged differences between types of secondary service connection claims form a basis for distinguishing *Manzanares*. Our court has made clear that "the effective date for secondary conditions is governed by section 3.400" and that requiring primary and secondary claims to have the same effective date "would be illogical, given that secondary conditions may not arise until years after the onset of the original condition." *Ellington v. Peake*, 541 F.3d 1364, 1369 (Fed. Cir. 2008). We hold that the Veterans Court applied the correct legal standard.

As to Mr. Dietrich's contention that the Veterans Court failed to address his rating for hypertension or the lower hypertension threshold for individuals with diabetes (his sixth and seventh alleged sources of error), we note that Mr. Dietrich did not challenge his rating for hypertension. Mr. Dietrich only challenged the effective date of his

service connection before the Board.   SAppx20–26. Because we cannot consider arguments raised for the first time on appeal, we decline to do so here. *See, e.g., Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1362 (Fed. Cir. 1998) ("As a general rule, an appellate court will not hear on appeal issues that were not clearly raised in the proceedings below.")

## CONCLUSION

We have considered Mr. Dietrich's remaining arguments and find them unpersuasive.  Accordingly, for the foregoing reasons, we dismiss-in-part and affirm-in-part.

**DISMISSED-IN-PART AND AFFIRMED-IN-PART**

## COSTS

No costs.